In re J.W. GORE and Judy Gore, Debtors.

FARMERS AND MERCHANTS BANK OF DES ARC, ARKANSAS, Plaintiff,

v.

J.W. GORE and Judy Gore, Defendants.

UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, Plaintiff,

v.

J.W. GORE and Judy Gore a/k/a J.W. Gore Farms, Debtors; and A.L. Tenney, Trustee, Defendants.

Bankruptcy No. LR 88–2284M. CMS Nos. 89–489M, 89–675M and 89–570M.

United States Bankruptcy Court, E.D. Arkansas, W.D.

Dec. 20, 1989.

Lance Hanshaw, Cabot, Ark., for debtors.

Phillip D. Hout, Newport, Ark., for Kansas City Life Ins. Co.

Robert M. Abney, Des Arc, Ark., for Farmers and Merchants Bank of Des Arc.

David G. Henry, Stuttgart, Ark., for Travelers Ins. Co.

William Adair, Little Rock, Ark., for U.S. Small Business Admin.

A.L. Tenney, N. Little Rock, Ark., trustee.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On November 14, 1988, J.W. Gore and Judy Gore filed a voluntary petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. On March 22, 1989, the debtors filed an amended plan of reorganization. Objections to confirmation were filed by Travelers Insurance Company (Travelers), Farmers and Merchants Bank of Des Arc (Farmers & Merchants), the Small Business Administration (SBA), and Kansas City Life Insurance Company (KCL). Farmers & Merchants and the SBA also filed motions requesting relief from the stay.

A hearing on the objections and motions was conducted on April 11 and 12, 1989, and the case was taken under advisement. The matters before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G), (L) and (M), and the Court has jurisdiction to enter a final judgment. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

I

### GENERAL PROVISIONS

The objecting creditors have raised objections to several provisions of the plan which are applicable to all creditors. 11 U.S.C. § 1222(b) lists various provisions that a chapter 12 plan may include. In addition to specifically allowed provisions, section 1222(b)(11) permits a plan to include "any other appropriate provision not inconsistent with this title." The debtors' plan contains several provisions which are inconsistent with the Bankruptcy Code.

The plan provides at page 9 as follows:

> When appropriate, with the approval of the Chapter 12 Trustee, the debtor, shall be permitted to sell selected property and either pay the proceeds of sale to appropriate lienholders if any, on that asset, or apply the proceeds to the purchase of other property in replacement of the property sold. Such sale shall be free and clear of any interest in such property of any creditor(s), except that the proceeds of such sale shall be subject to such interest, whether such proceeds are distributed to the creditor(s) secured thereby or are reinvested in new property. If the proceeds are reinvested in new property, the debtor shall see that a replacement lien is attached to and perfected on the replacement property in favor of the original creditor in an amount equal to the then-outstanding debt which was secured by that lien.

This paragraph would permit the debtors, during the life of the plan, to sell property which is subject to liens free and clear of the liens without providing the secured creditor adequate protection. Unless the debtors surrender the collateral to the secured creditor or the creditor elects to accept less, a chapter 12 plan must provide that a secured creditor retain its lien to the extent of its secured claim. 11 U.S.C. § 1225(a)(5). *See In re Butler*, 97 B.R. 508, 511 (Bankr.E.D.Ark.1988). Furthermore, this provision is unfair to creditors in that it does not provide that any sale of

property would be conducted in a manner which would provide the affected creditor notice and an opportunity to object.

■ The plan provides at page 9:

Payment of all or a part of a claim of a creditor may be made from property of the estate or property of the debtor. Some or a part of the debtor's property may be sold or in the alternative, may be distributed among those creditors having an interest in such property. Such distribution, if any shall operate as a complete satisfaction of the claim secured thereby.

This provision is not authorized by the Bankruptcy Code. An undersecured creditor has a secured claim equal to the value of its collateral and an unsecured claim for the balance regardless of whether or not the debt was nonrecourse. *See* 11 U.S.C. § 506(a). This provision would permit the debtors to eliminate the creditor's unsecured claim and determine the amount of its secured claim without notice or an opportunity to object. *See* Bankruptcy Rule 3012; 11 U.S.C. § 1225(a)(5).

■ The plan provides at page 9:

This plan shall have a term ending three (3) years after the first payments hereunder. Upon substantial satisfaction of the terms of this Plan, debtor shall be discharged as to all claims, except as otherwise provided in this Plan, whether or not said claims were scheduled by the debtor.

Granting the debtors a discharge upon "substantial satisfaction" of the terms of the plan is contrary to 11 U.S.C. § 1228(a), which permits a discharge "after completion by the debtor of all payments under the plan." The debtors may obtain a discharge without making all payments under the plan only by complying with 11 U.S.C. § 1228(b).

■ The plan provides at page 10:

Payments that are made beyond the period specified herein because [of] government delays or insurance delays shall be considered timely paid. The debtor shall retain the right of application of payment.

If the debtor should have a crop failure or other disaster, the debtor shall have authority to defer the payments owing to secured creditors, so long as the debtor: (1) Pays the interest owing; and (2) has paid the full payment owing the preceding year. For purposes of this Plan, however, the debtor shall be considered current if interest payments are made as set out above.

The debtors are allowed to modify their plan after confirmation under 11 U.S.C. § 1229(a)(2) to "extend or reduce the time for ... payments." However, pursuant to 11 U.S.C. § 1229(b)(2), a creditor is entitled to a hearing on any application to modify a plan. These plan provisions provide for an unlimited default period without giving creditors notice and an opportunity to object and are, therefore, not fair and equitable to the creditors.

The plan provides at page 10:

All liens are specifically retained by creditors under this Plan are of no effect. Notwithstanding anything herein to the contrary, all liens avoidable under § 522(f) of the Code are hereby avoided and of no further force and effect.

This paragraph is unintelligible and self-contradictory.

■ The plan provides at page 10:

In the event that the debtor does not remain current with a secured creditor under this Plan, then such creditor shall be authorized to exercise its state law remedies of foreclosure without application to the Bankruptcy Court. In the event that a creditor exercises its right of foreclosure, however, such creditor shall have no recourse against the debtor, individually.

This provision is inconsistent with the Bankruptcy Code because it fails to recognize that the automatic stay remains in effect until the plan has been completed and the discharge granted. *See* 11 U.S.C. § 362(c). Furthermore, if the debtors do not obtain a discharge, a creditor retains the full amount of its claim, and would have full recourse against the debtors under nonbankruptcy law.

## II

## SPECIFIC PROVISIONS

KCL, Travelers, the SBA and Farmers & Merchants have also raised specific objections to the treatment of their claims under the debtors' plan.

■ 11 U.S.C. § 1225(a) provides in pertinent part as follows:

[T]he court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(c) the debtor surrenders the property securing such claim to such holder[.]

Therefore, unless a creditor accepts the plan without objection or receives its collateral from the debtors, the plan must propose to pay the present value of each creditor's secured claim, as determined by the value of the collateral securing the claim. *See* 11 U.S.C. § 506(a); *In re Snider Farms, Inc.*, 83 B.R. 977, 987 (Bankr.N.D. Ind.1988).

## KCL CLAIM

■ According to the debtors' plan, KCL holds a claim of $61,645.70 secured by 200 acres of farmland in Prairie County, Arkansas. The plan provides in substance that KCL will retain its lien and be paid the value of its secured claim in twenty-five annual installments of $4,317.87, including interest at the rate of 9.5% per annum. The secured claim was valued at $40,-750.00. Both sides introduced appraisal testimony regarding the value of the property in question. The land consists of 20.8 acres of cultivated acreage, 89 acres in a government set-aside program and 90 acres of woods.

The debtors offered the opinions of two appraisers, Marshall Boyer and Marvin Fisher, who valued the tract at an average price of approximately $206.00 per acre. Mr. Boyer, whose appraisal was dated June 30, 1988, based his estimate on four comparable sales which occurred in 1987. The sales, which were all foreclosure sales, were for $300.00, $289.00, $201.00 and $542.00 per acre. Only one of the sales prices supports Mr. Boyer's final valuation of the debtors' property, and the comparisons are discounted further by the fact that the sales were distress sales, rather than arms length transactions between willing buyers and willing sellers. *See In re Courtright,* 57 B.R. 495, 496 (Bankr.D. Or.1986). Mr. Fisher appraised the debtors' entire 780–acre farm at an average price of $250.00 per acre, and relied on four comparable sales. The first sale, an auction sale by the Farmers Home Administration in 1987, was for $405.00 per acre which included a 1,040 square foot brick dwelling. Mr. Fisher could not remember the identities of the seller and buyer for the second sale, which was for $411.00 per acre in 1988. The third sale did not indicate a price, date, or the identities of the seller and buyer. The fourth sale brought $225.00 per acre, but no sale date was indicated.

Rhona Weaver, the appraiser for KCL, testified that in her opinion the 200–acre tract was worth $84,500.00 or approximately $423.00 per acre. Her appraisal was dated March 27, 1989. She relied on twelve comparable sales with sale prices ranging from $300.00 to $800.00 per acre, which she adjusted for various factors. One of the comparable sales, which neither of the debtors' appraisers considered, was adjacent to the debtors' property and occurred in March 1988. None of the sales used by Ms. Weaver were foreclosure sales.

After considering the testimony and reviewing the approaches of the three appraisers, the Court finds Ms. Weaver's appraisal to be substantially more persuasive than the debtors' appraisals. The Court,

therefore, fixes the value of the 200 acres at $84,500.00.

KCL also objects to the twenty-five year payout of its claim and to the use of a lower interest rate than in the parties' original contract. In light of the Court's determination of value, these objections will be considered if they arise in the context of a modified plan.

## TRAVELERS CLAIM

■ According to the debtors' plan, Travelers has a claim of $207,481.35 secured by 468.9 acres of land in Lonoke and Prairie Counties. Under the plan, Travelers will retain its lien on the land, which the debtors value at $111,830.00. The plan proposes to pay the value of Travelers' secured claim through twenty-five annual payments of $12,796.70, which include interest at the rate of 10.5%.

Travelers introduced the appraisal of John D. Armour who appraised the real property securing the Travelers lien at $188,000.00 or $401.00 per acre. The debtors offered the opinions of Marshall Boyer, who valued the debtors' entire farm at an average of $254.00 an acre, and Marvin Fisher, who valued the entire farm at $250.00 per acre. Mr. Boyer's and Mr. Fisher's appraisals have already been discussed. Mr. Armour based his appraisal on five comparable sales in 1988 and 1989 which had prices ranging from $375.00 to $600.00 per acre. Mr. Armour's appraisal is more persuasive than the debtors' appraisals, and the Court fixes the value of the Travelers tract at $188,000.00.

Travelers also objects to the twenty-five year payout, the interest rate that the plan proposes to pay on its claim, and the feasibility of the debtors' plan. These objections will be considered if they arise in the context of a modified plan.

## SBA CLAIM

The plan alleges that SBA holds a third mortgage on real property owned by the debtors but that no value exists over the first and second mortgages. Therefore, the plan, in substance, reduces SBA's secured claim to an unsecured claim, and SBA would be paid nothing under the plan. In view of the Court's determinations of value, the Court will consider the SBA's objections if they arise again in the context of a modified plan.

## FARMERS & MERCHANTS CLAIM

■ According to the debtors' plan, Farmers & Merchants holds a claim of $77,-593.67 secured by farm equipment and 111.13 acres of land. The plan values the land at $45,140.00 and the farm equipment at $49,000.00, and Farmers & Merchants does not dispute the valuations. The plan provides that Farmers & Merchants will retain its lien in the collateral and that the secured claim will be divided into two portions for purposes of payment. The plan proposes to pay $45,140.00 of the indebtedness, the portion secured by the real property, in twenty-five annual installments of $5,165.37, including 10.5% interest. The plan treats the remaining indebtedness as secured by the equipment and proposes to pay this portion in seven annual installments of $6,840.00 with 10.5% interest.

Farmers & Merchants objects to the bifurcation of its claim and asserts that the portion of its claim secured by the equipment will become unsecured due to depreciation of the collateral. This objection is overruled because no evidence was submitted regarding the current condition or depreciable life of the equipment. Furthermore, the debtors' plan contains a provision for replacement and repair of the equipment.

■ Farmers & Merchants also objects to the interest rate and twenty-five year payout for the debt secured by the real property as being contrary to the parties' original contract. As long as the requirements of 11 U.S.C. § 1225(a)(5)(B)(i) and (ii) are met, the Bankruptcy Code permits deferred payments over extended periods regardless of the prior financial arrangements between the parties. *In re O'Farrell*, 74 B.R. 421, 423–24 (Bankr.N.D. Fla.1987). Additionally, the contract rate of interest is not controlling. *In re Snider Farms, Inc.*, 83 B.R. 977, 989 (Bankr.N.D.

Ind.1988). For a creditor to receive the present value of its claim under section 1225(a)(5)(B)(ii), the interest thereon must be comparable to the current market rate for a loan under similar circumstances. *See United States v. Doud,* 869 F.2d 1144, 1145 (8th Cir.1989); *In re Batchelor,* 97 B.R. 993, 995–96 (Bankr.E.D.Ark.1988). Since no evidence of the market rate was introduced, the objection is overruled.

▇ Farmers & Merchants' claim is additionally secured by the debtors' 1988 crops and proceeds. The debtors' plan proposes to retain checks issued jointly to the debtors and Farmers & Merchants for use in financing the debtors' 1989 crop. Farmers & Merchants asserts that the use of these proceeds prevents its position as a secured creditor from being adequately protected. Without considering the security interest in the crops, Farmers & Merchants' claim is oversecured by an equity cushion of over $16,000.00. This cushion is not likely to erode substantially since the claim is primarily secured by real property, and any depreciation of the equipment securing the remainder of the claim is offset by the plan's provisions for upkeep and replacement. *See In re Adam,* 92 B.R. 732, 736 (Bankr.E.D.Mich.1988). Additionally, the plan provides that Farmers & Merchants will retain a continuing lien in subsequent crops of the debtors until all payments to Farmers & Merchants are completed. It is unlikely that any chapter 12 plan could succeed without the debtor's ability to use the proceeds from his crops to finance his continued farming operations. *See In re Hansen,* 77 B.R. 722, 728 (Bankr.D.N.D.1987). Therefore, Farmers & Merchants' objection is overruled and the debtors are allowed to retain the crop proceeds subject to the limitations set forth in the debtors' plan.

### III

### FARMERS & MERCHANTS MOTION FOR RELIEF FROM STAY

▇ Farmers & Merchants has also requested relief from the automatic stay to proceed with foreclosure of the 111.13 acres partially securing its claim. The property consists of approximately 57 acres of timber and 13 acres of minnow ponds, with the remaining acreage unidentified. The property is not the same property which secures the other creditors' claims. Two houses are located on the property, one of which has no value and one which the debtors' appraisers valued at between $7,500.00 and $14,000.00.

The debtors' plan states that the debtors have no equity in the property. Mr. Gore testified that the timberland, which was scattered throughout the acreage, did not produce any income for him. The property containing the minnow ponds was appraised at $800.00 an acre; however, the debtors' calculations for effectuating their plan did not include any income from the ponds, which Mr. Gore testified were operated by his son. Mr. Gore testified that he received little or no rental income from the two houses. There was no testimony regarding the necessity or use of the remaining acreage. Based on these facts, the debtors have not established that the 111.13 acres are necessary for an effective reorganization, and Farmers & Merchants' motion is granted.

### IV

### SBA MOTION FOR RELIEF FROM STAY

▇ The SBA has also requested relief from the automatic stay to offset payments received by the debtors under a government set-aside program. The debtors propose to use these payments in implementing their plan of reorganization. Since the debtors' plan requires extensive modification pursuant to this order, resolution of this motion will be deferred until such time as an amended plan is proposed.

### V

### CONCLUSION

The objections of KCL, Travelers and the SBA regarding valuation and the general plan provisions are therefore sustained. Farmers & Merchants' objections are overruled. All other objections, as well as the

SBA's motion for relief from stay, will be considered if they arise in the context of an amended plan. Farmers & Merchants' motion for relief from stay is granted. Confirmation of the plan is·denied, and the debtors are given thirty days to file an amended plan, or the case will be dismissed upon notice and hearing.

IT IS SO ORDERED.