**In re Albert ROBERTSON, Sr.**

**Bankruptcy No. 91–30315 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Jan. 14, 1992.

Joe Barrett, Jonesboro, Ark., for debtor.

William Ayres, West Memphis, Ark., for First State Bank.

A.L. Tenney, Trustee, No. Little Rock, Ark.

## ORDER DENYING CONFIRMATION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the creditor First State Bank's objection to confirmation of the debtor's Chapter 13 plan on the grounds that it does not provide for payment of First State Bank's secured interest.

First State Bank holds a note signed by the debtor in the approximate amount of $25,000, secured by real property that is the debtor's principal residence. First State Bank is the third lienholder with respect to the real property. The issue in this case is the extent to which the First State Bank is secured. That is, the Court must determine as a factual matter the value of the real property securing the debt. *See* 11 U.S.C. § 506. The debtor asserts that the value of the property is $36,000. The First State Bank asserts that the value of the property is $51,000.

Under Bankruptcy Code section 1325(a)(5), the plan must provide for distribution of property having a present value not less than the amount of the secured claim. *In re Owens*, 120 B.R. 487, 489, 492 (Bankr.E.D.Ark.1990) ("[A] chapter 13 plan may be confirmed with regard to a secured creditor where the plan provides that the secured creditor retain its lien and be paid the 'value' of its collateral as of the effective date of the plan."); *see In re Gore*, 113 B.R. 504, 509 (Bankr.E.D.Ark.1989). Thus the valuation of the property governs the secured creditor's rights under a confirmation plan. *National Bank of South Carolina v. Chemical Financial Corp. (In re Grubbs)*, 114 B.R. 450, 451 (D.S.C.1990) (hereafter *Grubbs*). The issue in this case is whether "value" has been provided pursuant to section 1325(a)(5) of the Bankruptcy Code.

Valuation is a question of fact, and can be overturned on appeal only if clearly erroneous. *In re Vitreous Steel Products Company*, 911 F.2d 1223, 1232 (7th Cir. 1990); *Grubbs*, 114 B.R. at 451.

Property valuations in bankruptcy are "determined in light of the purpose of such valuation and of the proposed dis-

position or use of such property, and in conjunction with any hearing on such disposition or use." 11 U.S.C. § 506(a). When valuation of a secured claim is for purposes of plan confirmation, the value should be determined as of that date, not as of the filing date. *In re Seip*, 116 B.R. 709, 710–11 (Bankr.D.Neb.1990) (following *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388, 399 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)); *In re Landing Associates, Ltd.*, 122 B.R. 288, 292–93 (Bankr.W.D.Tex.1990). Value is a flexible concept determined on a case-by-case basis, taking into account the competing interests in each case. *In re Owens*, 120 B.R. at 489 (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356 U.S.Code Cong. & Admin.News 1978, p. 5787); *Grubbs*, 114 B.R. at 451. There is no clear-cut formula or benchmark for valuing creditor's collateral; valuation depends on facts and evidence presented in each particular case. *In re Owens*, 120 B.R. 487 (Bankr.E.D.Ark.1990). When the debtor intends, as here, to retain the collateral, the value of the creditor's interest should be determined without regard to hypothetical liquidation costs. *In re Landing Associates, Ltd.*, 122 B.R. at 294 ("Section 506(a) specifically states that value is determined in light of the purpose of the valuation *and the proposed disposition or use of the property.*").

■ A proof of claim filed in bankruptcy is *prima facie* valid under Bankruptcy Code section 502(a) and is *prima facie* proof of its validity under Bankruptcy Rule 3001(f). Thus, the debtor bears the initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim. However, the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim.

*In re Schaumburg Hotel Owner Limited Partnership*, 97 B.R. 943, 950 (Bankr. N.D.Ill.1989).

■ The Court finds that the First State Bank is the holder of a valid note in the amount of $24,949.00. While the debtor indicated that he disputed the amount of the note, he offered no evidence regarding why he considered the amount incorrect. His sole reason for the dispute was that he had been "wheeling and dealing" in such a manner that he did not have records of the correct amount and thus was unsure of the correct amount owed. The Court finds this incredible and insupportable: neither the failure to keep records nor the habit of "wheeling and dealing" rebuts the evidence submitted by the bank of the amount due.[1]

The parties each called a witness to testify regarding the value of the property. The creditor's witness was qualified as an expert,[2] testified, and submitted an appraisal report. The report was contained in part on a form Uniform Residential Appraisal Report, which consisted of a fairly detailed analysis of the features of the dwelling. In addition, the bank's appraiser conducted two methods of valuation: the sales comparison analysis and a cost approach. The appraiser indicated a value of $52,247 by the cost approach. A value of $51,000 was reached by the sales comparison approach to valuation. While the appraiser did make adjustments to the comparison figures, they are somewhat less than helpful because the neighborhood of the comparable housing was better than that of the debtor's residence.

■ The Court permitted the debtor's appraiser to testify but did not qualify him as an expert during the course of the trial. The debtor's appraiser has been a real estate broker for 21 years and has attended seminars on valuation. His knowledge was

---

1. Further, the Court places no credibility in the debtor's testimony that he signed a blank note. There was also significant confusion regarding what documents were signed by the debtor. The debtor indicated his signature appeared on some documents and not on others. These indications of his signature, however, were not consistent during direct and cross-examination.

2. The bank's expert had 11 years experience as a real estate appraiser, possessed a bachelor's degree in real estate and urban land studies, was a member of numerous real estate organizations, held various certifications, and was continuing in his licensing endeavors.

gained during 21 years of experience, 19 of them in the West Memphis area, as a real estate broker. This has been held to be sufficient to qualify as an expert in the valuation of real property. *In re Randall Construction, Inc.*, 20 B.R. 179, 185 (N.D.Ohio 1981). The Court will qualify the debtor's witness as an expert for purposes of this trial. The lack of training and other qualifications in this area will, however, significantly affect the weight given to his testimony.

The appraisal report by the debtor's appraiser, in contrast to the bank's report, relied solely on comparables. No analysis was made in the report, but merely the conclusion as to the value with a few photographs. The two comparables submitted, while in the same neighborhood as the debtor's residence, were less than one-half the size of the debtor's residence. Further, the comparables were forced sales which indicates that they may be appraised at higher values than the sale prices. *See In re Gore*, 113 B.R. 504, 509 (Bankr.E.D.Ark. 1989).

 While both of the appraisals have flaws, the debtor's appraisal is significantly more flawed than the bank's appraisal. The debtor's appraisal relies solely on the comparison method of valuation. The Court finds that the houses compared are simply not comparable to the debtor's residence: the size of the homes and the general appearance from the photographs are of no assistance to the Court. The only information submitted to the Court regarding the debtor's comparable was the square footage, the fact that they were HUD sales, the address, the date of sale, the age, and the sale price. In contrast, the bank's appraisal report contained greater detail and included information regarding lot size, condition of the house, the number of rooms and baths, the existence of a garage, energy efficient items, fireplaces, and the nature and quality of the heating and cooling systems, among other features by which the comparisons could be made.

A difficulty with the comparables also existed for the bank's appraisal. The diffi-

culty arose because there were simply no recent sales of comparable houses in debtor's neighborhood. The bank's appraisal treats the paucity of comparables by examining each characteristic of the dwellings and adding or subtracting value in order to better compare the homes. The bank's appraisal specifically treats the fact that the compared homes were found in a better neighborhood than the debtor's. After considering the testimony, the demeanor of the witnesses, and reviewing the analyses of the appraisers, the Court finds the bank's appraisal to be more persuasive than the debtor's appraisal. The value of the debtor's residence is therefore fixed at $51,000.

ORDERED that the Objection to Confirmation is hereby sustained. The debtor shall serve and file a modified plan in accordance with these findings on or before January 31, 1992.*

IT IS SO ORDERED.

---

* A motion to dismiss filed by the trustee is set for February 4, 1992.