In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.

In re LTV STEEL COMPANY, INC., Debtor.

Bankruptcy No. 86 B 11273.

United States Bankruptcy Court, S.D. New York.

Feb. 4, 1993.

Davis Polk & Wardwell, New York City by Thomas Ogden, Karen Wagner, David Wollmuth, for LTV Steel Co., Inc.

Stroock & Stroock & Lavan, New York City by Mark Speiser and Brian Cogan, Blank, Rome, Comisky & McCauley, Philadelphia, PA by William Taylor, III, for Official Committee of Unsecured Creditors of LTV Corp.

Wilmer, Cutler & Pickering, Washington, DC by Patrick Connors, for Official Committee of LTV Aerospace & Defense Co.

Dow, Lohnes & Albertson, New York City by Joseph Kelly, for Riggs Nat. Bank of Washington, D.C.

Mudge Rose Guthrie Alexander & Ferdon, New York City by David Friedman, for Mutual Series Fund, Inc., Gabriel Capital, L.P. and Angelo, Gordon & Co.

## MEMORANDUM DECISION ON DEBTOR'S MOTION FOR PARTIAL JUDGMENT AND CREDITORS' CROSS–MOTION

BURTON R. LIFLAND, Chief Judge.

### BACKGROUND

LTV Steel Company, Inc. (the "Debtor" or "LTV Steel") seeks partial judgment, pursuant to Federal Rule of Civil Procedure 52(c), that this Court will eliminate from consideration the going concern value of certain collateral securing the J & L Mortgage (as hereinafter defined) in fixing the allowed amounts of the Trustee's (as hereinafter defined) respective secured and unsecured claims on behalf of the J & L Bondholders (as hereinafter defined). The Riggs National Bank of Washington, D.C., as successor indenture trustee under the J & L Mortgage (the "Trustee"), and a group of bondholders have cross-moved for a determination that certain collateral securing the J & L Mortgage must be valued on a going concern basis.

This Court is in the process, pursuant to § 506(a) of the Bankruptcy Code, 11 U.S.C. §§ 101—1330 (1993) (the "Code"), and Federal Rule of Bankruptcy Procedure 3012, of valuing a security interest granted under an Indenture of Mortgage and Deed of Trust dated September 1, 1947 among Jones & Laughlin Steel Corporation, a predecessor of the Debtor, and certain inden-

ture trustees, as supplemented and amended (the "J & L Mortgage"). This security interest is composed of certain interests in several facilities which the Debtor currently operates, and was granted as collateral (the "J & L Collateral")[1] for certain bonds issued pursuant to the J & L Mortgage (the "J & L Bonds"). The Trustee has filed two proofs of claim on behalf of the J & L Bondholders, totalling in excess of $330 million, for the outstanding principal and accrued interest under the J & L Bonds.

To date this Court has heard testimony and received evidence over the course of eleven days (the "Valuation Trial" or "Trial") on the value of the J & L Bondholders' interest in certain facilities which comprise the J & L Collateral. The purpose of the Trial is to value the J & L Bondholders' interest in the Hennepin Works ("Hennepin"), the Aliquippa Works ("Aliquippa"), the Cleveland West Works ("Cleveland West") and the Pittsburgh Works ("Pittsburgh") as of the second quarter of 1991.[2] The Trial's record has not been formally closed.

Section 506(a) of the Code provides that an allowed claim is a secured claim to the extent of the value of the creditor's interest in the collateral which secures the Debtor's obligation, and an unsecured claim to the extent that such allowed claim exceeds the value of the creditor's interest in the collateral. 11 U.S.C. § 506(a); *see* Weintraub & Resnick, *Bankruptcy Law Manual* ¶ 5.11[1] (3d ed. 1992). Applying this precept to the facts presently before the Court, the J & L Bondholders will have a secured claim to the extent of the value

of the J & L Collateral and an unsecured claim to the extent that their claim exceeds the value of the J & L Collateral.

In accordance with an Order of this Court, the J & L Bondholders' interest in Cleveland West will not be valued pursuant to a going concern methodology. *See* Order on Valuation of Cleveland West Steelworks Property Subject to J & L Mortgage, dated May 26, 1992 at 2. In addition, the parties agree that the Pittsburgh facility will be valued on a liquidation basis. *See* Transcript of April 13, 1992 Valuation Trial at 8–9. The Debtor operates the Aliquippa Tin Mill, located at Aliquippa, and Hennepin within its vertically integrated tin and steel production operations, respectively, and these plants are recognized to be the most valuable of the currently operating facilities securing the J & L Bonds. The Debtor plans to operate Hennepin and the Aliquippa Tin Mill after LTV Steel emerges from chapter 11.

The selection of a methodology to value the J & L Bondholders' interest in Hennepin and the Aliquippa Tin Mill, in light of the expert witness testimony, is at the core of the dispute over the value of the J & L Bondholders' interest.[3] The Debtor asserts that the Court should not consider going concern value in valuing the J & L Bondholders' interest in Hennepin and the Aliquippa Tin Mill because the J & L Mortgage does not grant the J & L Bondholders an interest in those assets which comprise a going concern (*i.e.*, intangibles). The Debtor claims that if the J & L Collateral, as granted under the J & L Mortgage, includes going concern value, § 506(a) of

---

**1.** The term "J & L Collateral" is used to refer to the interests granted to the J & L Bondholders under the J & L Mortgage, and this term does not refer to any assets, or any interests in assets, which were not granted under the J & L Mortgage.

**2.** As has been previously noted, it has been understood that a legally sufficient protocol or mechanism must be developed in order to roll the 1991 value to a point in time at or near the date of confirmation. *See* Transcript of October 6, 1992 Hearing on Motion to Dismiss Valuation Trial at 54–55; Transcript of May 27, 1992 Valuation Trial at 893–94.

**3.** The range of values which are produced by applying different valuation methodologies is clearly demonstrated by the evidence adduced by the Debtor's expert witnesses with respect to the value of the J & L Bondholders' interest in Hennepin. The Debtor values this interest at approximately $14.5 million using an orderly liquidation analysis, and at no more than $38.5 million applying a fair market value in-place methodology. The Debtor values the entire Hennepin facility, which the Debtor asserts includes certain assets in which the J & L Bondholders do not have an interest, at between $75 to $100 million employing a going concern methodology. *See* Debtor's Memorandum in Support of Motion for Partial Judgment at 7.

the Code precludes valuing Hennepin and the Aliquippa Tin Mill as going concerns. Finally, the Debtor asserts that it is the law of the case that the J & L Bondholders' interest in the Aliquippa Tin Mill does not include going concern value because this facility would have no going concern value but for certain postpetition capital expenditures which rescued it from obsolescence. The Trustee and certain bondholders have cross-moved, seeking a determination that Hennepin and the Aliquippa Tin Mill must be valued as going concerns.

## I. DISCUSSION

### A. Rule 52(c)

Rule 52(c) of the Federal Rules of Civil Procedure, as made applicable herein by Federal Rules of Bankruptcy Procedure 3012 and 9014, provides, in pertinent part, that:

> If during a trial without a jury a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained ... without a favorable finding on that issue[.]

Fed.R.Civ.P. 52(c). Rule 52(c), the successor to involuntary dismissal under former Rule 41(b), enables a court to dispose of particular claims when a party has failed to prove its case by the applicable standard of proof. *Fechter v. Connecticut Gen. Life Ins. Co.*, 800 F.Supp. 182, 196 (E.D.Pa. 1992) (citations omitted).

■ A properly executed proof of claim is "prima facie evidence of the validity and amount of the claim," Fed. R.Bankr.P. 3001(f); *see also* 11 U.S.C. § 502(a); *Connecticut General Life Ins. Co. v. Schaumburg Hotel Owner Ltd. Partnership (In re Schaumburg Hotel Owner Ltd. Partnership)*, 97 B.R. 943, 950 (Bankr.N.D.Ill, E.D.1989); *In re Horizon Mach. & Eng'g Corp.*, 54 B.R. 669, 670 (Bankr.N.D.Ill., E.D.1985), and there is no dispute that the Trustee has properly filed proofs of claim on behalf of the J & L Bondholders. The Debtor, however,

through its presentation of evidence during the course of the Valuation Trial, has overcome this presumption with respect to the validity and amount of the Trustee's secured claim. *See, e.g., In re Schaumburg*, 97 B.R. at 950. The Trustee, therefore, has the ultimate burden to demonstrate, by a preponderance of the evidence, both the extent and validity of its lien and the value of the collateral which secures its lien. *Id.* (*cited in In re Robertson*, 135 B.R. 350, 352 (Bankr.E.D.Ark.1992)); *see also Central Rubber Prods. v. Stafford Higgins Indus. (In re Central Rubber Prods.)*, 31 B.R. 865, 867 (Bankr.D.Conn.1983). Applying this standard to the instant dispute, the Debtor claims that the Trustee has failed to demonstrate that the J & L Bondholders' interest in Hennepin and the Aliquippa Tin Mill should be valued pursuant to a going concern methodology.

### B. Section 506(a)

■ As a threshold matter, the Debtor suggests that the process of selecting the appropriate valuation methodology should begin with an examination of the granting clauses of the J & L Mortgage. The Court declines this invitation and will begin its analysis with § 506(a) of the Code, the statute pursuant to which the Court is valuing the J & L Bondholders' interest. *See Connecticut National Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (citations omitted)); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 487, 37 S.Ct. 192, 195, 61 L.Ed. 442 (1917)) ("[W]here ... the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.' "); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979) ("[I]n every case involving the construction

of a statute, our starting point must be the language employed by Congress."); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541, 98 S.Ct. 2923, 2929, 57 L.Ed.2d 932 (1978) ("The starting point in any case involving construction of a statute is the language itself.")

The first sentence of § 506(a) provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of *the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the *value of such creditor's interest* or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (emphasis added). The Debtor claims that the phrase "value of such creditor's interest in the estate's interest in such property" means that the selection of a valuation methodology depends upon the scope of the J & L Bondholders' security interest as granted under the J & L Mortgage. The Debtor asserts that because the J & L Mortgage only granted the J & L Bondholders an interest in certain hard assets, such as buildings and machinery, the going concern value of Hennepin and the Aliquippa Tin Mill should not be considered in valuing the J & L Bondholders' security interest. *See, generally*, J. Queenan, *Standards for Valuation of Security Interests*, 92 Com.L.J. 18, 24–38 (1987) (§ 506(a) instructs a court to value the creditor's interest which "consists of the right to foreclose and the obligation to employ commercially reasonable means in so doing." *Id.* at 36) A going concern valuation methodology generally includes an analysis of certain intangible assets which are created by employing the hard assets in the operation of a facility such as Hennepin.

"As statutory construction, however, is a holistic endeavor[,]" *United Sav. Ass'n v. Timbers of Inwood Forest Assoc.*,

484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988), it is necessary to examine § 506(a)'s second sentence before reaching any conclusion with respect to the meaning of § 506(a)'s first sentence. Section 506(a)'s second sentence provides that:

> *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property*, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). This sentence's first two words, "[s]uch value" refers to the "value of such creditor's interest in the estate's· interest in such property" as stated in § 506(a)'s first sentence. The creditor's interest, in the context of the present dispute, is an interest in certain assets granted to the J & L Bondholders pursuant to the terms of the J & L Mortgage. The Debtor is therefore correct in noting that the purpose of a § 506(a) valuation is to value the creditor's interest. However, the phrases "such value" and "value of such creditor's interest in the estate's interest in such property" instructs a court *what* to value but not *how* to value it.

The second sentence contains a clear and unambiguous instruction as to *how* a court should select a valuation methodology. This sentence provides that the value of the creditor's interest *"shall* be determined in light of the purpose of the valuation and of the proposed disposition or use of such property."* 11 U.S.C. § 506(a) (emphasis added). This language expressly directs a court to consider the purpose of the valuation and the proposed use of "such property." The phrase "such property" refers to the "property in which the estate has an interest," as noted in the first sentence. Therefore, while the purpose of a § 506(a) valuation is to establish the value of the creditor's interest, this determination must be made in view of the proposed disposition of the property in which the creditor has an interest. As the statute directs that the selection of a valuation methodology should be based upon the proposed use of the property, this Court will not focus on the granting clauses of the J & L Mortgage

to determine which valuation methodology to employ. *See Connecticut National Bank*, — U.S. at —, 112 S.Ct. at 1149 (1992) ("When the words of a statute are unambiguous, then the first canon is also the last: 'judicial inquiry is complete.' " (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981)); *see also General Motors Acceptance Corp. v. Mitchell (In re Mitchell)*, 954 F.2d 557, 561–62 (9th Cir.1992) (Noonan, J. dissenting).

■ In accordance with § 506(a)'s clear and unambiguous language, the J & L Bondholders' interest shall be valued for the purpose of fixing the amount of the J & L Bondholders' secured and unsecured claims for distribution under the Debtor's plan of reorganization.[4] This interest will be valued in light of the Debtor's announced intention to operate Hennepin and the Aliquippa Tin Mill after its chapter 11 reorganization, and therefore the valuation methodology will take this proposed use into account. *See, e.g., In re Fiberglass Indus., Inc.*, 74 B.R. 738, 742 (Bankr. N.D.N.Y.1987); *see also* C.J. Fortgang & T.M. Mayer, *Valuation in Bankruptcy*, 32 U.C.L.A. L.Rev. 1061, 1064 (1985). In view of the foregoing, the Debtor has not demonstrated that the Court is precluded from considering going concern values in determining the value of the J & L Bondholders' interest in Hennepin and the Aliquippa Tin Mill.

■ Notwithstanding the foregoing, the J & L Mortgage's granting clauses will be closely examined to determine the extent of the J & L Bondholders' interest in the Debtor's property. To the extent that the going concern value of a particular facility is enhanced by or attributable to assets in which the J & L Bondholders do not have an interest, such value *will not* be credited towards "the value of such creditor's interest." Therefore, just as § 506(a) instructs a court to value the collateral in light of its proposed use, it also makes plain that a

creditor shall not have a secured claim to the extent that *its claim exceeds the value of its interest in the collateral*. Put another way, going concern value under § 506(a) is not without constraints.

### C. Law of The Case and Aliquippa

The Debtor claims that it is the law of the case that the J & L Bondholders' interest in Aliquippa does not include going concern value. This assertion is based on this Court's "Order On Valuation of Cleveland West Steelworks Property Subject to J & L Mortgage," dated May 26, 1992 (the "Cleveland West Order"), which provides, in pertinent part:

> ORDERED ... that without a proposed capital investment in a continuous caster and related improvements costing in excess of $300 million, Cleveland West Steelworks ... has no going concern value; and it is further
>
> ORDERED ... that pursuant to 11 U.S.C. § 552, LTV Steel's proposed capital investment ... at the Cleveland West Steelworks, shall not enhance the value under 11 U.S.C. § 506 of the [J & L Bondholders'] prepetition security interest in existing real and personal property under the J & L Mortgage[.]

Cleveland West Order at 2. The Debtor asserts that because Aliquippa would not have any going concern value but for the Debtor's postpetition capital investments, it is the law of the case that the J & L Bondholders' interest in Aliquippa does not extend to going concern value.

■ " 'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). The Cleveland West Order

---

**4.** Section 2.4 of the LTV Second Amended Joint Plan of Reorganization ("the Plan") provides that Class 1.27 consists of the J & L Bondholders. Section 3.4 of the Plan states that "each holder of an Allowed Class 1.27 Claim will be entitled to receive $348.85 in cash and 6.87

shares of New LTV Common Stock, as well as 13.60 CVRs, for each $1,000 principal amount of the Allowed Claim held by such holder." Section 3.4 of the Plan also provides that Class 1.27 is impaired.

clearly indicates that the factual predicate to this Court's conclusion with respect to the J & L Bondholders' interest in Cleveland West was that without an infusion of postpetition capital this facility would have no going concern value. The Debtor attempts to demonstrate that the same issue is presently before the Court, namely that Aliquippa would have no going concern value but for certain postpetition capital expenditures, with the unsubstantiated statement that "[t]he Aliquippa Tin Mill would not have any going concern value but for extensive post-petition capital expenditures by LTV Steel." Debtor's Memorandum in Support of Motion for Partial Judgment at 23.

The Debtor has failed to marshal evidence or testimony introduced thus far during the Valuation Trial which supports this position, and an independent examination of the entire Valuation Trial transcript reveals that the Debtor has not presently introduced sufficient evidence to demonstrate that the precise issue decided in the Cleveland West Order is controlling with respect to the value of the J & L Bondholders' interest in the Aliquippa Tin Mill. The doctrine of law of the case is therefore not applicable at this time. However, and as noted previously, the evidentiary record has not been closed, leaving this issue open for amplification.

In view of the foregoing, the Debtor's motion is denied with respect to those issues raised in Part I.B of this Memorandum Decision, and denied without prejudice with respect to the issue of law of the case, as dealt with in Part I.C of this Memorandum Decision. The Trustee's motion is granted with respect to Hennepin, and can be granted with respect to the Aliquippa Tin Mill if the Debtor, as described in Section II, *infra,* declines to supplement the record with respect to this facility.

## II. THE NEXT STEP

In the course of considering the motions which are the subject of this Memorandum

Decision, the Court reviewed the entire Valuation Trial record and those documents and reports received into evidence. As a result of this analysis, the Court has made the following determinations which should allow for a relatively timely conclusion of this § 506(a) valuation proceeding.[5]

### A. The Rule 706 Witness

■ Although the Court has previously indicated that it was considering, *sua sponte,* the appointment of a Rule 706 expert, *see* Transcript of June 30, 1992 Valuation Trial at 1357, the Court does not require an expert to value the J & L Bondholders' interest as of the second quarter of 1991.[6] This Court initially considered such appointment, in large part, due to the wide ranging quasi-conflicting expert witness conclusions with respect to the price that a stand-alone Hennepin or Aliquippa Tin Mill would pay for the requisite hot bands (the feedstock for Hennepin and the Aliquippa Tin Mill). *See* Transcript of June 30, 1992 Valuation Trial at 1357. After reviewing the testimony of Messrs. Caruso, Marcus, Wiley and Harvey, the expert witnesses who testified with respect to the price that a stand-alone Hennepin or Aliquippa Tin Mill would pay for hot bands, this Court has concluded that the parties have adduced sufficient credible evidence with respect to hot band pricing such that this Court finds itself in a position to make a determination, for the purposes of valuation, as to the price that a stand-alone Hennepin or Aliquippa Tin Mill would pay for hot bands. In view of the foregoing, the appointment of a Rule 706 expert to value the J & L Bondholders' interest as of the second quarter of 1991 is not warranted.

### B. The Scope of the J & L Bondholders' Lien

One of the principal legal issues before the Court is the scope of the J & L Bond-

**5.** The hearing on the Debtors' Second Modified Joint Disclosure Statement is scheduled for February 17, 1993.

**6.** The Court has as yet not determined whether it requires Rule 706 assistance to roll the 1991 value to a point in time at or near the date of confirmation.

holders' lien under the J & L Mortgage. All parties have submitted detailed and comprehensive memoranda of law with respect to this issue in connection with the Valuation Trial and the motions which are the subject of this Memorandum Decision. In view of the extensive briefing to date, the Court requires no further briefing. In the event that a party wants to file a supplemental brief or memorandum, it shall do so within ten days from the date this Memorandum Decision is issued.

### C. Hennepin

The value of the J & L Bondholders' interest in Hennepin lies at the heart of this dispute. As set forth hereinabove, the Court has carefully analyzed the expert testimony with respect to the price that a stand-alone Hennepin would pay for hot bands, as well as the relative merits of the discounted cash flow and market multiples methodologies. Based upon this analysis, the Court is in a position to render a decision with respect to the value of the J & L Bondholders' interest in Hennepin as of the second quarter of 1991, and the evidentiary record is therefore closed with respect to the J & L Bondholders' interest in this facility as of the second quarter of 1991.[7]

The Trustee would seek to adduce the testimony of Mr. Wise, a former President of LTV Steel's "Hot Rolled Division," as an expert. Transcript of June 2, 1992 Valuation Trial at 1140–42.[8] Mr. Wise would testify, *inter alia,* about the ability of a stand-alone Hennepin to employ a skilled workforce and operate in an environment in which Hennepin could only realize a profit from its ability to produce finished steel from hot bands supplied by third parties. *See id.; see also* Transcript of June 30, 1992 Valuation Trial at 1354–56. A review of the entire record supports this Court's initial ruling that Mr. Wise's testimony would be of a "cumulative nature" in view of the testimony of Messrs. Marcus, Harvey and Matthews. Transcript of June 2, 1992 Valuation Trial at 1144. The Court concludes, based upon its analysis of the Trial's record and the counsel for the Trustee's proffer of Mr. Wise's testimony, that the probative value of Mr. Wise's evidence is substantially outweighed by the needlessly cumulative nature of such testimony, *see* Fed.R.Evid. 403, and therefore the Court adheres to its initial ruling sustaining the objection to Mr. Wise's testimony. As previously noted, the evidentiary record with respect to the value of the J & L Bondholders' interest in Hennepin as of the second quarter of 1991 is closed.[9]

### D. Aliquippa

The Valuation Trial's record remains open with respect to the value of the J & L Bondholders' interest in Aliquippa because that record is not fully developed. *See, supra,* Part I.C. The Debtor may chose to adduce additional evidence with respect to Aliquippa which demonstrates that the law of the case, as developed in the Cleveland West Order, is applicable with respect to the J & L Bondholders' interest in Aliquippa.

If the Debtor declines to supplement the record, the Valuation Trial's record with respect to the value of the J & L Bondhold-

---

7. The Trustee apparently considers that the J & L Bondholders' claims are either fully or over collateralized based upon the value of the J & L Bondholders' interest solely in Hennepin. *See* Testimony of Gilbert Matthews, Transcript of April 30, 1992 Valuation Trial at 549–602, 688–692; "Report by Bear Stearns with respect to Hennepin" at 7, Trustee's Exhibit R; "Report with respect to Hennepin based on Hot Band Price of $310 Per Ton," Trustee's Exhibit S; "Hennepin Steel Values Based on $310 Price of Hot Bands," Trustee's Exhibit T. The Court's analysis of the Valuation Trial record and documents admitted into evidence indicates, however, that the Trustee's position is not well founded.

8. In a proffer of Mr. Wise's testimony, counsel for the Trustee referred to a Mr. Kenneth Wise, Transcript of June 2, 1992 Valuation Trial at 1137, and in a post-Trial submission to a Mr. Leonard Wise. Trustee's Memorandum of Factual and Legal Issues at 6. It is assumed that counsel for the Trustee was referring to the same individual.

9. To the extent that the Trustee's Memorandum of Factual and Legal Issues raises additional questions with respect to evidentiary matters relating to Hennepin, such matters were decided during the course of the Trial. *See* Trustee's Memorandum of Factual and Legal Issues at 7.

ers' interest in Aliquippa as of the second quarter in 1991 will be closed. Once closed, each party shall submit a summary of the Valuation Trial record with respect to Aliquippa. *See* Transcript of June 30, 1992 Valuation Trial at 1358.

### E. Cleveland West & Pittsburgh

As in the case of the J & L Bondholders' interest in Hennepin, the Court has concluded that it does not require any additional testimony with respect to the value of the J & L Bondholders' interest in Cleveland West and Pittsburgh as of the second quarter of 1991. Therefore, the record is closed with respect to the value of the J & L Bondholders' interest in Cleveland West and Pittsburgh as of the second quarter of 1991, and each party shall submit a summary of the Trial record with respect to these facilities.

### F. LTV Steel's Subsidiaries' Notes & Securities

The value of certain notes and securities of LTV Steel's subsidiaries which secure the J & L Mortgage was not, pursuant to this Court's instructions, the subject of the Valuation Trial. The Second Circuit's recognition that members of LTV's controlled-group are jointly and severally liable for the Pension Benefit Guaranty Corporation's (the "PBGC") claims, *see The Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. v. The LTV Corp. (In re Chateaugay Corp.),* 973 F.2d 141, 144 (2d Cir.1992), renders the effect of PBGC's claims upon the value of this collateral the dispositive factor with respect to the value of such collateral. The parties shall therefore submit memoranda of law with respect to the effect of the PBGC claims upon the value of the J & L Bondholders' interest in these notes and securities.

### G. Post–Trial Memoranda of Law

The parties have submitted statements of disputed factual and legal issues (the "Statements") but not post-trial memoranda of law. The disputed questions of law raised in the Statements have either been addressed in the memoranda of law which the parties have submitted in conjunction with the Trial and the motions which are the subject of this Memorandum Decision, or resolved in this Memorandum Decision. To the extent that the Statements raise relevant issues which have not been briefed by the parties, the Court has requested memoranda of law. *See, supra,* Part II.F. In view of the memoranda submitted to date and this Memorandum Decision, the Court requires no further briefing, except as specifically discussed herein. In the event that a party wants to file a supplemental brief or memorandum of law, it shall do so within ten days from the date this Memorandum Decision is issued.

### H. Rolling the 1991 Value Forward

As noted previously, the purpose of the Valuation Trial is to determine the value of the J & L Bondholders' interest as of the second quarter of 1991, and it has been understood that a protocol or mechanism must be developed to roll the 1991 value to a point in time at or near the date of confirmation. *See, supra,* n. 2. The Court is considering the appointment of a Rule 706 expert to assist the Court in rolling the 1991 value forward. *See, supra,* n. 6. As the Court (assuming compliance with numbers 1 through 4 of this Memorandum Decision's Conclusion) expects to be positioned to make a determination with respect to the value of the J & L Bondholders' interest in Hennepin as of the second quarter of 1991, the Court will indicate the procedure for establishing a mechanism to roll the 1991 value forward in that opinion.

### CONCLUSION

In view of the foregoing:

1. The parties shall submit an order consistent with Part I of this Memorandum Decision.

2. Each party shall submit a response (the "Response"), in memorandum form, with respect solely to Parts II.E & F of this Memorandum Decision. In its Response each party shall:

a. propose a schedule for submitting a summary of the Valuation Trial record with respect to Cleveland West and Pittsburgh, as discussed in Part II.E.

b. propose a briefing schedule with respect to the issue of the value of LTV Steel's subsidiaries' notes and securities, in light of PBGC's claims, as discussed in Part II.F.

3. The Debtor, in its Response, shall indicate whether it wants to introduce additional testimony or evidence with respect to the application of the law of the case to the J & L Bondholders' interest in Aliquippa, as discussed in Part II.D.

4. Each party shall submit its Response by 5:00 p.m., Wednesday, February 10, 1993.