In re Gregory L. OWENS and Debra Kay Owens, Debtors.

Bankruptcy No. 89–42664M.

United States Bankruptcy Court, E.D. Arkansas, W.D.

Aug. 3, 1990.

Aaron Fuller, Little Rock, Ark., for debtors.

Richard C. Kalkbrenner, Little Rock, Ark., for GMAC.

A.L. Tenney, Chapter 13 Trustee, Little Rock, Ark.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On December 18, 1989, Gregory L. and Debra Kay Owens (debtors) filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. On January 2, 1990, the debtors filed a proposed plan of reorganization, and on January 16, 1990, General Motors Acceptance Corporation (GMAC) filed an objection to the proposed plan. A confirmation hearing was held on February 16, 1990, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction to enter a final judgment in the case.

## I. FACTS

On March 3, 1988, the debtors purchased a 1988 Chevrolet Silverado pickup truck. GMAC financed the transaction and properly perfected its lien pursuant to state law. The sales contract provided for the repayment of the principal sum of $13,785.75, plus interest at the rate of 11% per annum. This indebtedness was to be paid in sixty equal monthly installments of $301.07 beginning on April 18, 1988.

The narrative statement of the plan provides that GMAC holds a prepetition claim in the sum of $10,934.07. The plan treats GMAC's claim as a secured claim in the amount of $8,000.00 and proposes to pay

this claim in full, plus interest computed at the contract rate of 11% per annum, in 30.25 monthly installments of $304.00. The $2,934.07 balance of GMAC's claim is treated as an unsecured claim, and the plan proposes to pay all unsecured creditors 100% of their claims without interest. The debtors calculated the value of GMAC's secured claim to be paid under the plan using the wholesale value of the truck.

GMAC objects to confirmation of the debtors' plan on two grounds. First, GMAC specifically argues that the amount of its secured claim should be based on a determination of the retail value of its collateral rather than the wholesale value as provided by the plan. Second, GMAC argues that the proposed contract rate of 11% is not the current market rate of interest resulting in the plan's not proposing to pay the present value of GMAC's secured claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii).

## II. DISCUSSION

A chapter 13 plan may be confirmed if certain requirements are met. These requirements are set forth in 11 U.S.C. § 1325, in relevant part, as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

This language has been interpreted to mean that a chapter 13 plan may be confirmed with regard to a secured creditor where the plan provides that the secured creditor retain its lien and be paid the "value" of its collateral as of the effective date of the plan. *See In re Cook*, 38 B.R. 870,

872 (Bankr.D. Utah 1984); *In re Beranek*, 9 B.R. 864 (Bankr.D.Colo.1981); *General Motors Acceptance Corp. v. Lum (In re Lum)*, 1 B.R. 186 (Bankr.E.D.Tenn.1979); 3 *Collier on Bankruptcy* ¶ 506.04, at 506–37 (15th ed. 1989). The parties do not dispute the lien requirement in this case.[1] The issue to be determined, however, is whether "value" has been provided pursuant to the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii).

### A. *Wholesale vs. Retail Value*

Resolving the issue of value requires a proper interpretation of 11 U.S.C. § 506(a). In relevant part, this section provides as follows:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The legislative history to section 506(a) illustrates the flexibility the court is permitted in arriving at the proper method for determining value. The House Judiciary Committee's comment to section 506(a) reads in part as follows:

"Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6312.

---

**1.** Paragraph II(E) of the proposed plan provides that "The secured claim(s) . . . which are secured by the motor vehicles . . . shall retain the lien(s) securing their claim(s). . . ."

■ It is clear from the legislative history that courts must use discretion in determining value on a case-by-case basis, depending on the purpose of the valuation and the proposed disposition or use of the collateral.

The evidence established that two distinct markets exist for motor vehicles: a wholesale market and a retail market. The wholesale market reflects prices paid by dealers purchasing vehicles from other dealers and at auctions in the ordinary course of business. The retail market reflects prices paid by individuals or entities purchasing vehicles from dealers as the ultimate purchaser of the vehicle.

■ Courts have relied on a number of different criteria, including wholesale value, retail value, an average between wholesale and retail value, retail replacement costs, and the "bid" market price, in determining the value of motor vehicles for confirmation purposes. *See Valley Nat'l Bank v. Malody (In re Malody)*, 102 B.R. 745 (Bankr. 9th Cir.1989); *In re Cook*, 38 B.R. 870 (Bankr.D.Utah 1984); *In re Reynolds*, 17 B.R. 489 (Bankr.N.D.Ga.1981); *Ford Motor Credit v. Miller (In re Miller)*, 4 B.R. 392 (S.D.Cal.1980); *In re Weaver*, 5 B.R. 522 (Bankr.N.D.Ga.1980); *In re Jones*, 5 B.R. 736 (Bankr.E.D.Va.1980); *In re Willis*, 6 B.R. 555 (Bankr.N.D.Ill.1980). There is no clear-cut formula or benchmark for "value," and valuation depends on the facts and evidence presented in each particular case. *See Valley Nat'l Bank v. Malody (In re Malody)*, 102 B.R. at 748.

■ In most cases where the collateral sought to be valued is a motor vehicle and the creditor is not in the business of selling vehicles, the retail method or replacement cost method of valuation has been rejected. *See Id.* at 750; *Grubbs v. National Bank of South Carolina (In re Grubbs)*, 114 B.R. 450 (D.S.D.1990); *In re Cook*, 38 B.R. at 873; *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y.1981); *Chrysler Credit Corp. v. Van Nort (In re Van Nort)*, 9 B.R. 218 (Bankr.E.D.Mich.1981); *In re Crockett*, 3 B.R. 365 (Bankr.N.D.Ill.1980); *In re Adams*, 2 B.R. 313 (Bankr.M.D.Fla.1980).

Section 1325 entitles a creditor to protection of the value of its allowed secured claim. Under 11 U.S.C. § 506(a), that secured claim is limited to the creditor's interest in the estate's interest in the property. The interest which must be protected is the creditor's interest in the vehicle as collateral. *See Chrysler Credit Corp. v. Van Nort (In re Van Nort)*, 9 B.R. at 221. The court in *In re Cook*, stated:

> The purpose of collateral valuation under Section 1325(a)(5)(B)(ii) is not to assure that secured claimants will receive under the plan as much money as debtors would have to spend to replace the collateral. Instead, the purpose of collateral valuation under Section 1325(a)(5)(B)(ii) is to protect secured claimants from loss by assuring that they will receive under the plan as much money, or its equivalent, as they would receive if they were permitted to sell the collateral in a commercially reasonable manner.

*In re Cook*, 38 B.R. at 873.

GMAC is not in the business of buying and selling automobiles, but serves as a financing company for automobile dealers. If GMAC were to repossess the vehicle, the vehicle would be sold at a local automobile auction. Record at 19. The court in *In re Adams* stated:

> ... The credit union is not an automobile dealer, and the collateral's value to them is only what they could get for it by their customary means of disposition, in this case, sale of the car at wholesale to an automobile dealer.

*In re Adams*, 2 Bankr. at 313. Applying the *Adams* analysis to the facts in this case, the value of GMAC's collateral is the value which it could realize from the vehicle if it were permitted to foreclose its lien and dispose of the vehicle in a commercially reasonable manner. The value GMAC could expect to realize in disposing of the vehicle in a commercially reasonable manner is the wholesale value. *See In re Klein*, 10 B.R. at 660; *Chrysler Credit Corp. v. Van Nort (In re Van Nort)*, 9 B.R. at 221; *In re Adams*, 2 B.R. at 313.

The debtors and GMAC introduced testimony from expert witnesses concerning the wholesale value of the vehicle. The debtors' expert witness testified that the wholesale value of the vehicle as of February 1990 was $7,225.00, if based on the "Black Book," and $8,000.00, if based on the National Automobile Dealers Association Guide (NADA). GMAC's expert witness testified that the wholesale value of the vehicle based on the December 1989 NADA was $9,150.00.[2]

Vincent Brooks (Brooks), the expert witness for the debtors, stated that he relies solely on the wholesale prices reflected in the "Black Book" in appraising motor vehicles. Brooks described the Black Book as a national publication which represents an average price of particular vehicles involved in wholesale transactions published by the National Automotive Publishing Company. Brooks stated that the Black Book is used at auctions and by wholesalers in determining wholesale prices for motor vehicles. He also stated the Black Book does not include "add-on" options and stated that for trade-in purposes, the NADA publication is used for computing the customer's trade-in value as to any add-on options.

Jackie Taylor (Taylor), the expert witness for GMAC, stated that she relies on the NADA publication[3] when appraising motor vehicles, but that she does not rely on it entirely for her appraisal amounts. Taylor described the NADA guide as a regional publication and stated that she uses the southwestern regional publication. She explained that the NADA publication has both wholesale and retail base prices, as well as prices for add-on options. Taylor testified that NADA provides only one price for add-on options, rather than separate prices for wholesale and retail values.

In addition, Brooks testified that the Silverado package consists of "tilt, cruise, power windows, power door locks, accents, trim, body side moldings." Record at 27. He further testified that the vehicle being valued did not have power windows or power locks. Brooks stated that he added to his Black Book appraisal $600.00 for the Silverado package; $400.00 for air conditioning; $125.00 for cruise control; $100.00 for the tilt wheel; $100.00 for the custom two-tone paint; $150.00 for the custom wheels; and $85.00 for the AM/FM cassette radio.

Brooks' testimony was confusing and contradictory in that he testified that the Silverado package included tilt steering and cruise control, but he also testified to including an additional $225.00 for these items in his appraisal. Further, Brooks stated that the Silverado package included power windows and power door locks, but testified that the vehicle being appraised did not have either of these two options. It is clear that Brooks added $600.00 for the Silverado package, which was the amount listed in the NADA publication for a complete Silverado package, and it is clear that Brooks did not adjust the value of the package due to the omission of power windows and locks.

Taylor testified that the Silverado package consists of "chrome in different and various places on the vehicle; on the body side moldings, the type of chrome bumper that caps over the wheels." Record at 22. Taylor stated that, in her appraisal, she added $600.00 for the Silverado package; $400.00 for air conditioning; $225.00 for the tilt wheel and the cruise control; $100.00 for tinted glass; $100.00 for deluxe two-tone paint; $150.00 for the rally wheels; and $100.00 for the AM/FM cassette radio. In addition to Taylor's testimony, GMAC introduced into evidence the

---

**2.** Both expert witnesses gave opinions as to the retail value of the vehicle; however, in light of the Court's ruling that the wholesale method of measurement should be used under the facts in this case, the retail values will not be addressed.

**3.** Many courts have recognized the NADA guide as an appropriate publication which may be referred to for motor vehicle appraisal purposes. *See In re Farrell,* 71 B.R. 627 (Bankr.S.D. Iowa 1987); *In re Knipping,* 40 B.R. 865 (Bankr. W.D.La.1984); *In re Cooper,* 11 B.R. 391 (Bankr. N.D.Ga.1981); *Catholic Credit Union v. Siegler (In re Siegler),* 5 B.R. 12 (Bankr.D.Minn.1980); *Chrysler Credit Corp. v. Cooper (In re Cooper),* 7 B.R. 537 (Bankr.N.D.Ga.1980).

dealer's invoice for the vehicle being appraised. The invoice reflected separate charges for the Silverado package ($696.00), tilt steering ($121.00), and cruise control ($205.00).

The Court finds Taylor's overall testimony more persuasive and more credible than Brooks' testimony. Therefore, based on this testimony, the Court finds that the value of GMAC's collateral as of the date of the confirmation hearing is $9,150.00, less any depreciation from December, 1989, until the date of confirmation of any modified plan.

### B. Valuation Date

■ Pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), the value of the collateral establishing the amount of the secured claim is to be determined "as of the effective date of the plan."[4] Neither the Bankruptcy Code, nor the legislative history defines the phrase "effective date of the plan." See In re Klein, 10 B.R. 657 (Bankr.E.D.N.Y.1981). The cases are split on whether the date the petition was filed or the date of the confirmation hearing should be used as the date of valuation. Compare In re Van Nort, 9 B.R. 218 (Bankr.E.D.Mich.1981); and In re Adams, 2 B.R. 313 (Bankr.M.D.Fla.1980) with In re Cook, 38 B.R. 870 (Bankr.D.Utah 1984); In re Reynolds, 17 B.R. 489 (Bankr.N.D.Ga. 1981); In re Klein, 10 B.R. 657 (Bankr.E. D.N.Y.1981); In re Fulcher, 15 B.R. 446 (Bankr.D.Kan.1981); In re Smith, 4 B.R. 12 (Bankr.E.D.N.Y.1980); and 5 Collier on Bankruptcy ¶ 1325.06, at 1325–37 (15th ed. 1989).

Section 1325(a)(5)(B)(ii) requires the court to compare, as of the effective date of the plan, the value of the creditor's secured claim with the value of the property to be distributed under the plan. This comparison would necessarily be performed at the confirmation hearing. Therefore, as a practical matter, this comparison would be more appropriate if the value of the vehicle and the value of the property to be distrib-

uted under the plan are determined as of the same date. See Kennedy, Cramdown of the Secured Creditor Under Chapter 13 of the Bankruptcy Code, 1982 Ann.Surv. of Bankr. Law 253, 258.

Collier on Bankruptcy states:

The value of the subject property should be determined as of the date to which the valuation related. For example, if the valuation is to determine the amount of a secured claim for purposes of a chapter 11, 12 or 13 plan, the value should be determined as of, or close to, the effective date of the plan.

3 Collier on Bankruptcy ¶ 506.04, at 506–37. Collier's conclusion is consistent with the better reasoned cases on this issue. While some flexibility in this rule may be required to account for those cases in which equity demands a different valuation date,[5] in the ordinary chapter 13 case involving the valuation of a motor vehicle, the date of the confirmation hearing is determined to be the proper date for determining the value of the collateral. Therefore, the value of GMAC's collateral will be determined as of the date of the confirmation hearing.

### C. Interest Rate

■ GMAC objected to the plan's proposal to pay the contract rate of interest of 11% on GMAC's secured claim, asserting that the proposed interest rate of 11% does not allow GMAC to receive the present value of its secured claim. GMAC contends that the interest rate should be determined based on the market rate of interest as of the date of the confirmation hearing.

For a creditor to receive the present value of its claim under 11 U.S.C. § 1325(a)(5)(B)(ii), the interest rate thereon must be comparable to the current market rate for a loan under similar circumstances. See United States v. Doud, 869 F.2d 1144 (8th Cir.1989); In re Butler, 97 B.R. 508, 513 (Bankr.E.D.Ark.1988); In re Batchelor, 97 B.R. 993, 995–96 (Bankr.E.D.Ark. 1988). In determining this rate, the Court

---

**4.** Although this issue was not argued or briefed by the parties in this case, a determination is necessary to the valuation of the collateral.

**5.** See, e.g., In re Klein, 10 B.R. 657 (Bankr.E.D. N.Y.1981).

must consider "the prevailing market rate for a loan of a term equal to the payout period, with due consideration to the quality of the security and the risk of subsequent default." 5 *Collier on Bankruptcy* ¶ 1129.03, at 1129–85 (15th ed. 1989). *See United States v. Doud,* 869 F.2d at 1145. The proposed rate of 11% per annum cannot be approved because no evidence was presented to indicate that this rate was the current market rate.

## III. CONCLUSION

Therefore, for the reasons stated, GMAC's objections are sustained. The debtors are granted twenty days to file a modified plan consistent with this order.

IT IS SO ORDERED.