**In re Brenda Mae CANADY–HOUSTON, Debtor.**

No. 02–42926.

United States Bankruptcy Court, W.D. Missouri.

July 30, 2002.

Maurice B. Soltz, Soltz & Shankland, Kansas City, MO, for debtor.

Steven Keith Coffin, Kansas City, MO, for creditor.

## ORDER

FRANK W. KOGER, Bankruptcy Judge.

Brenda Mae Canady–Houston ("Debtor") filed her petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 on June 5, 2002. Among the debts she listed was an obligation to Regency Financial Corp. ("Creditor") which appears to be a sub-prime lender that buys contracts and notes from a used car lot called The Finance Plaza. This obligation was duly listed and the Debtor apparently was current with payments, the vehicle was fully insured, and Debtor's status was the same after she filed bankruptcy as it was before.

The problem between Debtor and Creditor arose because Debtor, upon the advice of her counsel, had not agreed to reaffirm the entire obligation although she was making the payments and abiding in every way with all her contractual obligations to Creditor. Creditor filed a Motion for Relief From Stay on June 21, 2002, alleging that the vehicle was subject to wear and tear, physical depreciation, and economic depreciation, and "that Creditor's interest in said Automobile is not being adequately protected."

Debtor's response asserted that she had made every payment on the vehicle, was up to date in her payments and had never been late. Debtor further asserted that she had liability and collision insurance. Debtor denied that there was either physical or economic depreciation to the vehicle except normal wear and tear contemplated by both the Creditor and the Debtor and covered by her monthly installment contract.

On that basis, the issues were clearly drawn as to whether the provisions of 11 U.S.C. § 521(2)[1] are absolute mandates that allow no leeway or judgment or judgment or equity. Although this issue has not been decided at a level above the Bankruptcy Court in the Eighth Circuit, the issue has been ruled by eight of the Circuit Courts of Appeal. Those courts are divided. Four courts have ruled that debtors have an extremely limited alternative, i.e., if they are totally current and the creditor has no reason or rationale for repossession except that a petition has

---

1. Section 521(2) of the Bankruptcy Code states:

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

11 U.S.C. § 521(2).

been filed, they may "ride through" the bankruptcy and retain possession of the collateral without reaffirmation or immediate redemption. Those Courts allowing ride through are: the Ninth Circuit, *see McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.), *cert. denied*, 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); the Second Circuit, *see Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2nd Cir.1997), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); the Fourth Circuit, *see Home Owners Funding Corp v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992); and the Tenth Circuit, *see Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989).

The other four Circuits have ruled that a debtor must either redeem or reaffirm and have no other alternative. Those Courts denying ride through are: the First Circuit, *see Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir.1998); the Fifth Circuit, *see Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249 (5th Cir. 1996); the Eleventh Circuit, *see Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993); and the Seventh Circuit, *see In re Edwards*, 901 F.2d 1383 (7th Cir.1990).

The Eighth Circuit appears not to have ruled the issue. The District Court for the Western District of Missouri appears not to have determined the issue, and the Bankruptcy Courts of this District are not in concert on the issue. *See In re Gerling*, 175 B.R. 295 (Bankr.W.D.Mo.1994) (no ride through); *In re Manring*, 129 B.R. 198 (Bankr.W.D.Mo.1991) (ride through allowed).

Hearing was held on July 17, 2002, and counsel for both parties were present. Counsel for Creditor agreed that Debtor had fully complied with all requirements of the sales contract his client had bought from The Finance Plaza, Inc., a corporation owned by the same individuals who own Creditor. The "buy here—pay here" seller and Creditor, the buyer of the note and contracts generated by Finance Plaza, share office quarters. Their in-house counsel, who represented them in this matter, allegedly has filed some 1700 lawsuits on their behalf since 1994 in Jackson County, Missouri, alone. The contract signed by Debtor provides for interest at 18% per annum.

It is the opinion of this author that in over 90% of the cases that come before the Court, the debtor has suffered some kind of default with the lender who wishes a lift of stay, and such defaults most generally are:

1) failure to make payments;

2) lapse of insurance;

3) failure to insure;

4) demonstrable lack of care or abuse evidenced by excessive mileage or appearance;

5) repeated bankruptcy filings;

6) failed previous bankruptcies; and

7) the vehicle is decreasing in value more quickly than the payments cover.

In those cases, this author believes that the debtor must either reaffirm, redeem, or surrender.

■ However, where there has been no default of any kind nor prior problem with either the collateral or the individual, this author believes that a court may allow the debtor to retain possession of the collateral without reaffirming the debt or immediate redemption.

The Court is persuaded by all of the reasons set forth by the four Courts of Appeal that have adopted the more flexible approach, with several important observations. First, until October of 1979 when the Bankruptcy Reform Act of 1978 became the law of the land, every automotive

retail time agreement contained what was known in the trade as the "ipso facto clause." That clause provided that the mere filing of a bankruptcy petition—be it Chapter 7, Chapter 11, or Chapter 13—was an event of default, created an immediate acceleration of any and all sums due or to become due at any subsequent time and allowed the creditor to deem itself insecure and repossess the collateral.

The 1978 Act abolished said ipso facto clauses and there has sprung up a generation of bankruptcy practitioners who are not familiar with the past practice or Congress' determination to eliminate same. To grant relief from the stay against a debtor who has not missed a payment, has insurance coverage, and has yet caused no injury of any kind to the creditor, is, in effect, reinstating the "ipso facto clause" which Congress abolished. *See generally Lowry,* 882 F.2d at 1546; *Manring,* 129 B.R. at 199.

█ Next this Court is influenced by the wording (or lack thereof) contained in 11 U.S.C. § 521. That section outlines the debtor's duties and is certainly directive but lacks two things: (1) an inflexible time schedule, and (2) a penalty for failure to comply. The section allows the court "for cause" to fix a totally discretionary period of time for the debtor to comply with its directions. *See Boodrow,* 126 F.3d at 51. The section also lacks a provision establishing a penalty for the failure of the debtor to comply. *See Lowry,* 882 F.2d at 1546. Based on these deficiencies, the Court believes that Section 521 does not establish mandatory parameters for filing a reaffirmation agreement, redemption or surrender in the absence of a debtor's default of his or her contractual obligations.

Further, this Court observes that the lift of stay really does not accomplish anything for the creditor. All that the creditor receives from the garden variety lift of stay is the right to proceed in state court with an action for possession or for damages or for some affirmative act that the creditor's contract with the debtor delineates. Today, since the abolishment of the ipso facto clause, all the creditor of a bankrupt debtor who has not committed an act of default or missed a payment or failed to insure the collateral can do is watch the debtor and the collateral for some default and then take state court action (or more likely a moonlight replevin).

Finally, as the Second Circuit stated in *Boodrow:*

> Confining an individual Chapter 7 debtor to the choices of surrender, redemption or reaffirmation can severely interfere with providing the debtor a fresh start. As Judge Butzner explained in *In re Belanger,* a debtor is "unlikely to be able to redeem the collateral in a lump sum as required by § 722," and "reaffirmation requires the consent of the creditor in order to comply with § 524(c)." 962 F.2d at 348. Thus, if the options listed in § 521(2) were exclusive, a debtor's only real choices would be either to reaffirm the debt under whatever new terms the creditor requires or to surrender the property. Because reaffirmation involves negotiation between parties with unequal bargaining power and requires voluntary agreement by both debtor and creditor, it gives a creditor an effective veto on the "fresh start." Yet, surrender may deprive a debtor of much needed property, such as disabled debtor Boodrow's vehicle in this case.

*Boodrow,* 126 F.3d at 51.

For all of the foregoing reasons, the Court DENIES the Creditor's request for relief from the stay.