**In re Robert Roy PODNAR and Evelyn Sue Podnar, Debtors.**

**No. 03–21456.**

United States Bankruptcy Court,
W.D. Missouri,
Central Division.

Dec. 5, 2003.

Charles F. Johnson, Osage Beach, MO, for Debtors.

## MEMORANDUM OPINION

JERRY W. VENTERS, Bankruptcy Judge.

The issue presently before the Court in this case is one that now arises with increasing frequency in this District—the proper method and time for valuing property of the debtors for purposes of redemption in a Chapter 7 case.

Robert Roy Podnar and Evelyn Sue Podnar, the Debtors herein ("Debtors"), filed a motion for redemption pursuant to 11 U.S.C. § 722, seeking to redeem a 2000 Dodge Intrepid automobile. They requested that the allowed secured claim of the lienholder, Liberty Bank ("Liberty Bank"), in the motor vehicle be set at its trade-in value of $5,300.00 and that they be allowed to redeem the vehicle for that amount. Liberty Bank objected to the Debtors' motion, arguing that the retail value of the motor vehicle is at least $9,200.00 and that the Debtors should pay that amount to redeem the car.

The Court conducted a hearing on the motion in Jefferson City, Missouri, on November 6, 2003, at which time the Court took the matter under advisement. After reviewing the Debtors' motion, the objection, the arguments of counsel, and the relevant case law, the Court believes that the proper measure for valuing collateral pursuant to § 722 is the liquidation method and that the appropriate date for that determination, absent extenuating circumstances, is the date the motion to redeem is filed or, if the redemption is contested, the date of the hearing on the motion.

## I. BACKGROUND

On July 10, 2001, the Debtors purchased a 2000 Dodge Intrepid and signed a retail

installment contract for $15,852.28. The contract was subsequently assigned to Liberty Bank. On June 19, 2003, the Debtors filed a Chapter 7 bankruptcy. The Chapter 7 trustee determined that no assets existed for the estate to administer. The Debtors' Motion to Redeem was filed on September 29, 2003. As of September 24, 2003, the Debtors still owed $11,839.88 on the installment contract.

On August 28, 2003, LaDea Huftless, vice president of consumer loans at Liberty Bank, inspected the Debtors' vehicle and observed that both the interior and exterior were in good condition. The vehicle's odometer registered approximately 76,000 miles, and Huftless determined that as of September 1, 2003, its Black Book retail value was $9,200.00. This value did not take into account $550.00 in added value for the vehicle's CD player, power moonroof, and power seats. Thus, the total retail value might be as high as $9,750.00. The Debtors, on the contrary, valued the motor vehicle at $5,300.00 based on the October 2003 N.A.D.A. Official Used Car Guide's trade-in value, with a deduction for high mileage and additions for value-added features.

With respect to the proper time for valuation, Liberty Bank argues that the proper date for making a value determination should not be any later than when it inspected the vehicle—September 1, 2003. On the other hand, the Debtors argue that the proper date of valuation is the date of the contested hearing, which in this case was November 6, 2003.

## II. DISCUSSION

Pursuant to 11 U.S.C. § 506(a),[1] Liberty Bank only has an allowed secured claim to the extent that the value of its collateral covers the amount of its claim. Because the amount of Liberty Bank's claim is $11,839.88, and the value of the collateral is not more than $9,750.00, Liberty Bank is undersecured, and because the Debtors' § 727(b) discharge will terminate any personal liability on the debt, Liberty Bank is forced to take a substantial loss—the extent of which hinges on the valuation of the collateral. In most cases, the extent of the secured creditor's loss is determined by market conditions—i.e., the amount for which the vehicle may be resold less the costs of resale. In the context of redemption pursuant to § 722,[2] however, the court—not the marketplace—must determine the value of the collateral and the effective date of valuation.

### A. Methods of Valuing Collateral

■ Upon filing a Chapter 7 bankruptcy, a debtor has three choices for dealing

---

1. That section provides:

 An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

 11 U.S.C. § 506(a).

2. The statute provides:

 An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title [11 USCS § 522] or has been abandoned under section 554 of this title [11 USCS § 554], by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

 11 U.S.C. § 722.

with consumer debts that are secured by property owned by the debtor. Pursuant to 11 U.S.C. § 521(2), the debtor must file a statement of intention, if applicable, to surrender the collateral, redeem the collateral, or reaffirm the debt and retain the collateral.[3] Of the available alternatives, redemption of the collateral is fairly uncommon because the debtor, whose poor economic circumstances necessitated the filing of bankruptcy in the first place, lacks the funds to make a lump sum payment to the secured creditor and generally lacks the creditworthiness to obtain a new loan in an amount sufficient to pay off the prepetition lienholder. *Home Owners Funding Corp. of America v. Belanger (In re Belanger)*, 962 F.2d 345, 348 (4th Cir. 1992). In this case, however, the Debtors apparently have found a lender willing to finance the redemption of their 2000 Dodge Intrepid, thereby giving rise to the pending dispute over valuation.

Generally, there are three different approaches for valuing a motor vehicle: retail value, replacement value, and wholesale, liquidation, or foreclosure value. In some instances, some variation or departure from a particular method might be appropriate, in the court's equitable discretion. The boundaries between these tests are not always neatly delineated, and despite some underlying differences, courts generally use the terms "wholesale," "liquidation," and "foreclosure" interchangeably.[4] *Zell v. Chevy Chase Bank, FSB (In re Zell)*, 284 B.R. 569, 572 (Bankr.D.Md. 2002).

■ After consideration of the Supreme Court's holding in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997); the Congressional intent in formulating 11 U.S.C. § 722; jurisprudence from other jurisdictions; and the practicalities of redemption procedures, this Court finds that the proper measure for valuation of collateral to be redeemed in a Chapter 7 proceeding is the liquidation method.

First, in resolving a similar valuation problem in the context of a "cram down" in a Chapter 13 plan, the Supreme Court in *Rash*, 520 U.S. at 965, 117 S.Ct. 1879, concluded that "the value of the property retained ... is the cost the debtor would incur to obtain a like asset for the same proposed use."[5] The Court determined,

---

**3.** In *In re Canady–Houston*, 281 B.R. 286, 287–89 (Bankr.W.D.Mo.2002), the late Honorable Frank W. Koger of this Court held that a debtor who is current on his payments and other contractual obligations could retain the collateral and continue to pay the creditor without reaffirming the debt. This, in effect, offered debtors a fourth option. Although Judge Koger's ruling has sympathetic appeal, this Court does not believe it is authorized by the Bankruptcy Code. *See In re Gerling*, 175 B.R. 295, 296–98 (Bankr.W.D.Mo.1994) (holding that the Bankruptcy Code does not allow a debtor to retain and pay for collateral without reaffirming the debt).

**4.** The Court in this case will not parse the differences in value, if any, between the wholesale, foreclosure, or liquidation value. For the sake of convenience, the Court will refer to the test as the liquidation method.

**5.** The Court explained that the replacement value was not what it would cost for the debtor to purchase the product brand new, but it was the price a willing buyer in the debtor's trade, business or situation would pay a willing seller to obtain property of like age or condition. *Rash*, 520 U.S. at 959 n. 2, 117 S.Ct. 1879. The Court further explained that the bankruptcy courts, as the trier of fact, must determine whether the replacement value was the equivalent of retail, wholesale, or some other value based on the type of debtor and the nature of the property. Adjustments are necessary, where appropriate, to account for the absence of warranties, inventory, storage and reconditioning. charges. *Id.* at 965 n. 6, 117 S.Ct. 1879.

pursuant to the express language of 11 U.S.C. § 506(a), that the value of specific collateral is determined " 'in light of the purpose of the valuation and of the proposed disposition or use of such property.' " *Id.* at 961, 117 S.Ct. 1879. Taking the "proposed disposition or use" of the collateral as the key valuation determination, the Court reiterated that within the context of the debtor's Chapter 13 plan, the debtor proposed to retain the collateral and use it while paying the creditor over a period of fifty-eight months. *Id.* at 957, 962, 117 S.Ct. 1879. Thus, the Court reasoned that unlike the foreclosure value standard—which the Court implied would be applicable if the debtor had surrendered the collateral to the creditor—the replacement value standard gave meaning to the words "disposition and use" in that it more accurately reflected the loss of value of the collateral from deterioration by extended use (beyond payments for adequate protection), and more accurately gauged the debtor's proposed use of the property. *Id.* at 962–63, 117 S.Ct. 1879.[6]

Second, there are, quite obviously, practical differences between Chapter 13, which was the situation in *Rash,* and Chapter 7, which is the situation in this case. In Chapter 13, the creditor is subject to risks of deterioration from extended use of the vehicle over a period of perhaps several years and the possibility that the creditor might receive far less in a failed reorganization than if the debtor had immediately surrendered the collateral. Those risks are not present, however, in a Chapter 7 redemption, and thus it is appropriate to set the value at something approximating retail value. In contrast, when a debtor redeems collateral in a Chapter 7 proceeding, the creditor imme-

diately receives cash equal to the value of the collateral and the debtor and the creditor go their separate ways. The Chapter 7 creditor will receive at least the same amount it would receive had the debtor surrendered the collateral; in fact, as a practical matter, the creditor may actually receive more through a redemption than it would if the debtor surrendered the vehicle because it will not have the administrative and disposition expenses that are incurred to resell any vehicle. Accordingly, the liquidation value is the appropriate value to be placed on the collateral in a Chapter 7 redemption.

 Third, the legislative history of § 722 clearly demonstrates that Congress intended that, in the redemption context, a creditor should be paid the same amount that it would have been paid if the property were repossessed and sold. Congress intended a redemption by the debtor to be the equivalent of "a right of first refusal for the debtor in consumer goods that might otherwise be repossessed." 11 U.S.C. § 722 House Report (Reform Act of 1978) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 380–81 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6336, 6337). The purpose of redemption is to counteract creditor threats of repossession, which often allows the secured creditor to extract more from the debtor than if it had simply repossessed or foreclosed on the property. *Id.* Thus, through redemption, Congress envisioned that the debtor would be able to retain his necessary property and avoid high replacement costs while still allowing the creditor its expectation value on default under the terms of

---

**6.** The bankruptcy judges for the Western District of Missouri, consistent with *Rash,* have adopted a "starting point" valuation standard in Chapter 13 cases whereby the replacement

value of a motor vehicle is set at the Blue Book retail value less five percent. *In re Renzelman,* 227 B.R. 740, 742 (Bankr. W.D.Mo.1998).

the contract.[7] *Id.* Furthermore, Congress rejected the Senate version of the current statute, which provided that a benchmark for valuation of collateral was its "fair market value." Editors' Comment, Norton Bankruptcy Rules Pamphlet 2002–2003 Edition, p. 813.

Finally, other courts have established that the proper method for valuing collateral the debtor seeks to redeem is the collateral's liquidation value. *See, e.g., Triad Financial Corp. v. Weathington (In re Weathington),* 254 B.R. 895, 899 (6th Cir. BAP 2000) (holding that in Chapter 7 redemption cases the liquidation method is the proper benchmark for assigning a value to collateral); *Zell,* 284 B.R. at 572–73 (same); *In re Ard,* 280 B.R. 910, 915 (Bankr.S.D.Ala.2002) (same); *In re Ballard,* 258 B.R. 707, 709 (Bankr.W.D.Tenn. 2001) (same); *In re Murray,* 2000 U.S. Dist. LEXIS 22483 at *6–7 (Bankr. M.D.N.C.2000) (same); *In re Donley,* 217 B.R. 1004, 1007 (Bankr.S.D.Ohio 1998) (same). *Cf. In re Barse,* 301 B.R. 404, 406, 408 (Bankr.W.D.N.Y.2003) (stating that there are numerous reasons why the standard for determining the value of a motor vehicle being redeemed under § 722 should be based on a *Rash* replacement value or on a risk discounted replacement value, but because of the legislative history of § 722 and the reliance on that history by too many other courts, the proper measure for valuation under § 722 is the wholesale value).

■■ Accordingly, fully consistent with the Supreme Court's holding in *Rash,* Congressional intent, case law from other jurisdictions, and the practicalities of redemption procedures, the Court finds that the proper starting point for valuing the Debtors' 2000 Dodge Intrepid under 11 U.S.C. § 722 is the liquidation method. Adjustments may be necessary, where appropriate, to account for the absence of inventory, storage and reconditioning costs, or for different methods of liquidation. In this case, the Debtor asserts that the N.A.D.A. Official Used Car Guide's trade-in value should be used to determine a vehicle's auction or wholesale value. Although the N.A.D.A. Official Used Car Guide specifically states that its projected trade-in value is "not an [a]uction or wholesale value," the Court will, in the absence of any other evidence, accept a vehicle's trade-in value as a measure of what that vehicle would produce on liquidation.[8]

## B. Effective Date of Valuation

■ Having determined that the liquidation method is the appropriate means of valuing collateral pursuant to 11 U.S.C. § 722, the Court must now determine the effective date of that valuation. For the reasons stated herein, the appropriate date for valuing collateral is the date the motion for redemption is filed or, if the redemption is contested, the date of the hearing on redemption. *See Van Holt v. Commerce Bank of Bolivar (In re Van Holt),* 28 B.R. 577, 578 (Bankr.W.D.Mo.1983) (noting that courts are divided as to whether the valuation is to be as of the date of the filing of the petition or as of the date of the redemption hearing, and

7. Congress opined that the proper method of valuation may be the fair market value of the collateral if the debtor deliberately allowed the property to depreciate in value. 11 U.S.C. § 722 House Report (Reform Act of 1978) (citing S.Rep. No. 989, 95th Cong, 2nd Sess 95 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5881). No such allegations have been asserted in this case.

8. This is not to say that the N.A.D.A. Official Used Car Guide is the only source the Court will accept in determining a vehicle's trade-in value.

concluding that valuation at the time of hearing reflects a more realistic approach).

The filing of a case under Chapter 7 of the Bankruptcy Code creates an estate consisting of all of the debtor's property. 11 U.S.C. § 541(a). Pursuant to § 521(2)(A), a debtor has thirty days after the date of filing a petition under Chapter 7 of the Bankruptcy Code to file a statement of intention specifying the property the debtor intends to redeem. Within forty-five days after filing the notice of intent, the debtor "shall perform his intention with respect to such property," and the trustee has the obligation to ensure that the debtor performs the specified intention. §§ 521(2)(B) and 704(3). Thus, the date that the debtor files a petition for relief is the date that the statutory right of redemption accrues, and it is the filing date that initiates the time-lines for the debtor to make an election with regard to the estate's property. The time limits imposed in § 521, however, are not mandatory, and often a dilatory debtor will fail to file a statement of intention until goaded into action by a creditor seeking to repossess the debtor's property by filing a motion for relief from the automatic stay. *In re Eagle*, 51 B.R. 959, 962 (Bankr. N.D.Ohio 1985) (stating that the legislative history "clearly shows that the notice and time limitations of section 521(2) are not intended to abrogate the debtors' substantive rights under the Code.").

█ Although a party's secured status is determined on the date an order for relief is entered, the actual amount to which the creditor is secured may not be determined until foreclosure on the collateral, or at some later date.[9] Between the date of filing, and the date that the debtor makes the election to redeem property, the creditor may either receive adequate pro-

tection payments pursuant to 11 U.S.C. § 361, or seek relief from the automatic stay pursuant to § 362(d), and foreclose on the property. Although the Bankruptcy Code affords the debtor some breathing space to make an election to redeem collateral, the Court notes that a creditor's repossession and sale of collateral is also attendant with delay in liquidating the property. *In re Henderson*, 235 B.R. 425, 428 (Bankr.C.D.Ill.1999). That is, the right of a secured creditor to repossess is "delayed until the automatic stay against such action is lifted by specific order, the discharge is granted or denied, or the case is dismissed or closed." *In re King*, 75 B.R. 287, 290 (Bankr.S.D.Ohio 1987). Practically, a secured creditor incurs significant delay before it is able to repossess and liquidate its collateral; thus, setting the value of property as of the date of the order for relief results in a greater advantage to the secured creditor than if the debtor had not elected to redeem the collateral and the secured creditor had to repossess the vehicle after seeking relief from the automatic stay. Accordingly, the Court finds that it is the date that the debtor files a motion to redeem property that is the appropriate date for determining the value of collateral; and, if the redemption is contested, the date of the hearing is appropriate because that date most closely approximates the time frame during which a secured creditor could repossess and sell the collateral after a debtor's bankruptcy filing. The Court cautions, however, that an earlier date might be appropriate if the creditor demonstrates undue delay, negligence or other inequitable acts of the debtor which unfairly decrease the value of the collateral.

In this case, the contested hearing on the Debtors' motion to redeem was held by

---

9. In Chapter 13 cases, the value of the collateral is determined on the date of plan confir-

mation. *In re Owens*, 120 B.R. 487, 492 (Bankr.E.D.Ark.1990).

the Court on November 6, 2003, at which time the Debtors submitted that the October 2003 N.A.D.A. trade-in value was $5,300.00. Therefore, absent evidence demonstrating inequitable actions by the Debtors to warrant finding another value, the Court will fix the value of the 2000 Dodge Intrepid at $5,300.00 for redemption purposes.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Debtors' motion for redemption pursuant to 11 U.S.C. § 722. The Court finds that the proper measure for valuing the Debtors' 2000 Dodge Intrepid is the liquidation method, and the proper date for making that determination is the date of the contested hearing. The Debtor submitted uncontroverted evidence that the most recent N.A.D.A. guide listed the vehicle's trade-in value at $5,300.00. In the absence of any other evidence, the Court will accept the trade-in value as a measure of the vehicle's liquidation value. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 9014(c) and 7052.[10] A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.

---

10. For the benefit of the practitioners in this District, the Court would note that the other judges in this District have indicated their intention to employ the liquidation method set out herein.