**In re Robert Roy PODNAR and Evelyn Sue Podnar, Debtors.**

**No. 03–21456.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 8, 2003.

Charles F. Johnson, Osage Beach, MO, for Debtor.

Laura M. Llorente, for Liberty Bank.

## *MEMORANDUM OPINION*

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on a motion for redemption pursuant to 11 U.S.C. § 722, filed by Robert Roy Podnar and Evelyn Sue Podnar ("Debtors"), seeking to redeem a 2000 Dodge Intrepid and requesting that Liberty Bank's allowed secured claim in the motor vehicle be set at its trade-in value of $5,300.00. Liberty Bank objected to the Debtors' motion arguing that the retail value of the motor vehicle is $9,200.00. The Court conducted a hearing on this issue in Jefferson City, Missouri, on November 6, 2003, at which time the Court took the matter under ad-

visement. After reviewing the Debtors' motion, the objection, and the relevant case law, the Court is prepared to rule that the proper measure for valuing collateral pursuant to § 722 is the liquidation method and the appropriate date for that determination is the date of the contested hearing.

## I. BACKGROUND

On July 10, 2001, the Debtors purchased a 2000 Dodge Intrepid and signed a retail installment contract for $15,852.28, which was assigned to Liberty Bank. On June 19, 2003, the Debtors filed a Chapter 7 bankruptcy. The Chapter 7 trustee determined that no assets existed for the estate to administer.

On August 28, 2003, LaDea Huftless, vice president of consumer loans at Liberty Bank, inspected the Debtors' vehicle and observed that both the interior and exterior were in good condition. The vehicle's odometer registered approximately 76,000 miles, and Huftless determined that as of September 1, 2003, its Black Book retail value was $9,200.00, which did not account for $550.00 in added value for the vehicle's cd player, power moonroof, and power seats. The Debtors' valued the motor vehicle at $5,300.00 based on the October 2003 N.A.D.A. Official Used Car Guide's trade-in value with a deduction for high mileage, and additions for value added features. Liberty Bank argues that the proper date for making a value determination should not be any later than when it had inspected the vehicle—September 1, 2003. On the other hand, the Debtors argue that the proper date of valuation is the date of the contested hearing. As of September 24, 2003, the Debtors still owed $11,839.88 on the installment contract.

## II. DISCUSSION

Pursuant to 11 U.S.C. § 506(a),[1] Liberty Bank only has an allowed secured claim to the extent that the value of its collateral covers the amount of its claim. Because the amount of Liberty Bank's claim is $11,839.88, and the value of the collateral is not more than $9,200.00, Liberty Bank is undersecured, and because the Debtors' § 727(b) discharge will terminate any personal liability on the debt, Liberty Bank is forced to take a substantial loss—the extent of which hinges on the valuation of the collateral. In most cases, the extent of the secured creditor's loss is determined by market conditions—i.e., the amount for which the vehicle may be resold less the costs of sale. In the context of redemption pursuant to § 722,[2] however, the court

---

1. That section provides:

 An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

 11 U.S.C. § 506(a).

2. The statute provides:

 An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title [11 USCS § 522] or has been abandoned under section 554 of this title [11 USCS § 554], by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

must determine the value of the collateral, and the effective date of valuation.

## A. Methods of Valuing Collateral

 Upon filing a Chapter 7 bankruptcy, the debtor generally has four choices—three of them statutory—for administering collateral. Pursuant to 11 U.S.C. § 521(2), the debtor must file a statement of intention, if applicable, to either surrender, redeem, or reaffirm the collateral; or, under certain circumstances, a debtor who is current on its payments may retain the collateral and continue to pay the creditor. *See, e.g., In re Canady–Houston,* 281 B.R. 286, 287–89 (Bankr. W.D.Mo.2002) (holding that the Bankruptcy Code allows a debtor to retain and pay for collateral); *contra In re Gerling,* 175 B.R. 295, 296–98 (Bankr.W.D.Mo.1994) (holding that the Bankruptcy Code does not allow a debtor to retain and pay for collateral). Of the available alternatives, redemption of the collateral is fairly uncommon because the debtor, whose poor economic circumstances necessitated the filing of bankruptcy, simply lacks the funds to make a lump sum payment to the secured creditor. *Home Owners Funding Corp. of America v. Belanger (In re Belanger),* 962 F.2d 345, 348 (4th Cir.1992). In this case, however, the Debtors apparently found a lender willing to finance the redemption price of their 2000 Dodge Intrepid, giving rise to the ensuing dispute over valuation.

Generally, the different methods for valuing a motor vehicle are: the retail value; the replacement value; the wholesale, liquidation, or foreclosure value; or some departure from a particular tests to be determined in the court's equitable discretion. The boundaries between these tests are not always neatly delineated, and despite some underlying differences, courts generally use the terms "wholesale," "liquidation" and "foreclosure" interchangeably.[3] *Zell v. Chevy Chase Bank, FSB (In re Zell),* 284 B.R. 569, 572 (Bankr.D.Md. 2002). Based on the Supreme Court's holding in *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 965, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997), the Congressional intent in formulating 11 U.S.C. § 722, and jurisprudence from other jurisdictions, this Court finds that the proper measure for valuation when a Chapter 7 debtor elects to redeem collateral is the liquidation method.

First, confronting a similar valuation problem within the context of a "cram down" in a Chapter 13 plan, the Supreme Court in *Rash,* 520 U.S. at 965, 117 S.Ct. 1879, concluded that "the value of the property retained ... is the cost the debtor would incur to obtain a like asset for the same proposed use."[4] The Court determined, pursuant to the express language of 11 U.S.C. § 506(a), that a collateral's value is determined " 'in light of the purpose of the valuation and of the proposed disposi-

11 U.S.C. § 722.

**3.** The Court in this case will not parse the differences in value, if any, between the wholesale, foreclosure, or liquidation value. For the sake of convenience, the Court will refer to the test as the liquidation method.

**4.** The Court explained that the replacement value was not what it would cost for the debtor to purchase the product brand new, but it was the price a willing buyer in the debtor's trade, business or situation would

pay a willing seller to obtain property of like age or condition. *Rash,* 520 U.S. at 959 n. 2, 117 S.Ct. 1879. The Court further explained that the bankruptcy courts, as the trier of fact, must determine whether the replacement value was the equivalent of retail, wholesale, or some other value based on the type of debtor and the nature of the property. Adjustments are necessary, where appropriate, to account for the absence of warranties, inventory, storage and reconditioning. charges. *Id.* at 965 n. 6, 117 S.Ct. 1879.

tion or use of such property.' " *Id.* at 961, 117 S.Ct. 1879. Taking the "proposed disposition or use" of the collateral as the key valuation determination, the Court reiterated that within the context of the debtor's Chapter 13 plan, the debtor proposed to retain the collateral and use it while paying the creditor over a period of fifty-eight months. *Id.* at 957, 962, 117 S.Ct. 1879. Thus, the Court reasoned that unlike the foreclosure value standard—which the Court implied would be applicable if the debtor had surrendered the collateral to the creditor—the replacement value standard gave meaning to the words "disposition and use" in that it more accurately reflected the loss of value of the collateral from deterioration by extended use (beyond payments for adequate protection), and more accurately gauged the debtor's proposed use of the property. *Id.* at 962–63, 117 S.Ct. 1879.[5]

Unlike the facts confronting the Court in *Rash,* when a debtor redeems collateral the creditor immediately receives the collateral's value and is not subject to risks of deterioration from extended use and does not face the danger that it may receive far less in a failed reorganization than if the debtor had immediately surrendered the collateral. Rather, the creditor receives the same amount it would expect had the debtor elected to surrender the collateral without the added burdens of administrative and disposition expenses that are incurred to resell any vehicle.

Second, Congress intended a redemption by the debtor to be the equivalent of "a right of first refusal for the debtor in consumer goods that might otherwise be repossessed." 11 U.S.C. § 722 House Report (Reform Act of 1978) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 380–81 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5881). The purpose of redemption is to counteract creditor threats of repossession, which often allows the secured creditor to extract more from the debtor than if it had simply repossessed or foreclosed on the property. *Id.* Thus, through redemption, Congress envisioned that the debtor would be able to retain his necessary property and avoid high replacement costs while still allowing the creditor its expectation value on default under the terms of the contract.[6] *Id.* Furthermore, Congress rejected the Senate version of the current statute, which provided that a benchmark for valuation of collateral was its "fair market value." Editors' Comment, Norton Bankruptcy Rules Pamphlet 2002–2003 Edition, p. 813.

Finally, other jurisdictions have established that the proper method for valuating collateral the debtor seeks to redeem is the collateral's liquidation value. *See, e.g., Triad Financial Corp. v. Weathington (In re Weathington),* 254 B.R. 895, 899 (6th Cir. BAP 2000) (holding that in Chapter 7 redemption cases the liquidation method is the proper benchmark for assigning a value to collateral); *Zell,* 284 B.R. at 572–73 (same); *In re Ard,* 280 B.R. 910, 915 (Bankr.S.D.Ala.2002) (same); *In re Ballard,* 258 B.R. 707, 709 (Bankr.

---

**5.** The bankruptcy courts for the Western District of Missouri, consistent with *Rash,* have adopted a "starting point" valuation standard in Chapter 13 cases whereby the replacement value of a motor vehicle is set at the Blue Book retail value less five percent. *In re Renzelman,* 227 B.R. 740, 742 (Bankr. W.D.Mo.1998).

**6.** Congress opined that the proper method of valuation may be the fair market value of the collateral if the debtor deliberately allowed the property to depreciate in value. 11 U.S.C. § 722 House Report (Reform Act of 1978) (citing S. Rep. No. 989, 95th Cong., 2nd Sess. 95 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5881). No such allegations have been asserted in this case.

W.D.Tenn.2001) (same); *In re Donley,* 217 B.R. 1004, 1007 (Bankr.S.D.Ohio 1998) (same).

■ Accordingly, fully consistent with the Supreme Court's holding in *Rash,* Congressional intent, and case law from other jurisdictions, the Court finds that the proper starting point for valuing the Debtors' 2000 Dodge Intrepid under 11 U.S.C. § 722 is the liquidation method. Adjustments may be necessary, were appropriate, to account for the absence inventory, storage and reconditioning costs. The Debtor asserts that the N.A.D.A. Official Used Car Guide's trade-in value should be used to determine a vehicle's auction or wholesale value. The N.A.D.A. Official Used Car Guide, however, specifically states that its projected trade-in value is "not an [a]uction or wholesale value." Nevertheless, in the absence of any other evidence, the Court will accept a vehicle's trade-in value as a measure of what that vehicle would receive on liquidation.[7]

## B. Effective Date of Valuation

■ Having determined that the liquidation method is the appropriate measure for valuing collateral pursuant to 11 U.S.C. § 722, the Court must now determine the effective date of that valuation. For the reasons stated herein, the appropriate date for valuing collateral is the date of the hearing on redemption. *Holt v. Commerce Bank of Bolivar (In re Van Holt),* 28 B.R. 577, 578 (Bankr.W.D.Mo.1983).

The filing of a case under Chapter 7 of the Bankruptcy Code creates an estate consisting of all the debtor's property. 11 U.S.C. § 541(a). Pursuant to § 521(2)(A), a debtor has thirty days after the date of filing a petition under Chapter 7 of the Bankruptcy Code to file a statement of intention specifying the property the debtor intends to redeem. Within forty-five days after filing the notice of intent, the debtor "shall perform his intention with respect to such property," and the trustee has the obligation to ensure that the debtor performs the specified intention. §§ 521(2)(B) and 704(3). Thus, the date that the debtor files a petition for relief is the date that the statutory right of redemption accrues, and it is the filing date that initiates the time-lines for the debtor to make an election with regard to the estate's property. The time limits imposed in § 521, however, are not mandatory, and often a dilatory debtor will fail to file a statement of intention until goaded into action by a creditor seeking to repossess the debtor's property by filing a motion for relief from the automatic stay. *In re Eagle,* 51 B.R. 959, 962 (Bankr. N.D.Ohio 1985) (stating that the legislative history "clearly shows that the notice and time limitations of section 521(2) are not intended to abrogate the debtors' substantive rights under the Code.").

■ Although a party's secured status is determined on the date an order for relief is filed, the actual amount to which the creditor is secured may not determined until foreclosure on the collateral, or at some later date.[8] Between the date of filing, and the date that the debtor makes the election to redeem property, the creditor may either receive adequate protection payments pursuant to 11 U.S.C. § 361, or seek relief from the automatic stay pursuant to § 362(d), and foreclose on the property. Although the Bankruptcy Code affords the debtor some breathing space to

---

7. This is not to say that the N.A.D.A. Official Used Car Guide is the only source the Court will accept in determining a vehicle's trade-in value.

8. In Chapter 13 cases, the value of the collateral is determined on the date of plan confirmation. *In re Owens,* 120 B.R. 487, 492 (Bankr.E.D.Ark.1990).

make an election to redeem collateral, the Court notes that a creditor's repossession and sale of collateral is also attendant with delay in liquidating the property. *In re Henderson,* 235 B.R. 425, 428 (Bankr. C.D.Ill.1999). Namely, the right of a secured creditor to repossess is "delayed until the automatic stay against such action is lifted by specific order, the discharge is granted or denied, or the case is dismissed or closed." *In re King,* 75 B.R. 287, 290 (Bankr.S.D.Ohio 1987). Practically, a secured creditor incurs significant delay before it is able to repossess and liquidate its collateral; thus, setting the value of property as of the date of the order for relief results in a greater advantage to the secured creditor than if the debtor had not elected to redeem the collateral and the secured creditor had to repossess the vehicle after seeking relief from the automatic stay. Accordingly, the Court finds that it is the day that the debtor files a motion to redeem property that is the appropriate date for determining a collateral's value; and if contested, the date of the hearing is appropriate because that date most closely approximates the time frame during which a secured creditor could repossess and sell the collateral following a debtor's bankruptcy filing. The Court admonishes, however, that an earlier date might be used if the creditor demonstrates undue delay, gross negligence or other acts of the debtor which had unfairly decrease the value of the collateral.

In this case, the contested hearing on the Debtors' motion to redeem was held by the Court on November 6, 2003, at which time the Debtors submitted the October 2003 N.A.D.A. trade-in value was $5,300.00.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Debtors' motion for redemption pursuant to 11 U.S.C. § 722. The Court finds that the proper measure for valuing the Debtors' 2000 Dodge Intrepid is the liquidation method. The proper date for making that determination is the date of the contested hearing, and the Debtor submitted uncontroverted evidence that the most recent N.A.D.A. guide listed the vehicle's trade-in value at $5,300.00. In the absence of any other evidence, the Court will accept the trade-in value as a measure of the vehicle's liquidation value. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 9014(c) and 7052. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.